### FRANK B. MIKESKA V. THE STATE.

No. 3833. Decided February 17, 1916.

#### 1.—Murder—Insanity—Evidence—Simulating Insanity.

Upon trial of murder where the sole defense was insanity, the State introduced an expert witness on insanity who testified that he made a thorough examination with reference to defendant's mental condition while he was confined in jail, and found that the defendant according to the opinion of the expert was absolutely sane, and that if a person had a slip of the mind for a short time and then regained consciousness he would not know anything that took place during that interval; and that if the defendant several days after his wife died made a detailed statement of all the facts and movements of himself and wife and children during the day that she died and at the very time that she died that he would be absolutely sane at the time he committed the offense, and that defendant as he appeared in the court room was a changed man from his appearance and conduct and actions in the jail a day or two before the trial; that he seemed to take the role of melancholy and that he was not suffering from that disease, there was no reversible error. Davidson, Judge, dissenting.

#### 2.—Same—Evidence—Conduct of Defendant—Insanity.

Upon trial of murder, where the defendant objected to testimony on the ground that the conduct of defendant in the court-room was not a proper subject of inquiry to be considered by the jury, and that the manifest purpose of the questions propounded was to elicit from them and have them presented to the jury as a confession of the defendant's conduct while in jail and his conduct while in the court-room and that defendant had offered no evidence for the purpose of showing insanity by his looks, appearance, conduct, expression or gestures during the progress of the trial or while he was in jail, and that this was in fact causing him to testify against himself, these objections were correctly overruled. Following Tubb v. State, 55 Texas Crim. Rep., 606, and other cases. Davidson, Judge, dissenting.

#### 3.—Same—Rule Stated—Defendant's Failure to Testify—Confession—Non-expert Opinion.

The conduct and acts of defendant while in jail may be given in evidence, as a basis for an opinion by a non-expert as to defendant's sanity, although defendant was not warned that his acts and conduct would be used as evidence against him, as they are not a confession, and the admission of this testimony could not in a proper sense be held to be a reference to his failure to testify. Following Adams v. State, 31 S. W. Rep., 372.

#### 4.—Same—Evidence—Rule Stated—Insanity.

Where, upon trial of murder, it was in evidence that defendant had detailed all the incidents of the homicide a week after the same occurred, and

other evidence demonstrated that he correctly did so, there was no error in permitting experts on insanity to testify that if a person is laboring under a sudden attack of insanity, etc., and had a slip of his mind for an hour or a day he would not know anything he did during that time when his mind resumed its normal condition, and it was also permissible for them to testify that one who was insane to the extent of not knowing right from wrong would not and could not detail the incidents attendant upon the homicide, and the events that happened just before and subsequent thereto.

### 5.—Same—Evidence—Non-expert Testimony—Jailer.

Upon trial of murder, there was no error in permitting the deputy sheriff or jailor to testify that he observed closely the conduct of the defendant while in jail, and that he acted like any other ordinary person, and that he did not conduct himself in the jail like he did in the court-room. Following Burt v. State, 38 Texas Crim. Rep., 397, and other cases. Davidson, Judge, dissenting.

### 6.—Same—Evidence—Non-expert Testimony—Opinion of Witness.

Where, upon trial of murder, each of the State's witnesses detailed sufficient facts and showed sufficient acquaintance with the defendant, there was no error to permit them to state that during their associations and acquaintance with defendant there was nothing that led them to believe that there was anything wrong with his mind. Following Jordan v. State, 64 Texas Crim. Rep., 187.

### 7.—Same—Requested Charges—Temporary Insanity.

Where, upon trial of murder, there was no evidence that defendant was suffering from any disease at the time he killed his wife or at the time of the trial, and no evidence that the long continued use of ardent spirits, etc., produced temporary insanity, there was no error in refusing a requested charge on this question.

### 8.—Same—Charge of Court—Defendant's Failure to Testify.

Where the court fully instructed the jury that they could not consider defendant's failure to testify as a circumstance against him, there was no error in refusing a special charge on this issue.

### 9.—Same—Requested Charge—Delirium Tremens—Permanent Insanity.

Where, upon trial of murder, there was no evidence that defendant was suffering from delirium tremens, etc., at the time of the homicide, there was no error in refusing a requested charge in regard to defendant being permanently insane at the time of the homicide from the long continued use of intoxicating liquors. Following Dalgado v. State, 34 Texas Crim. Rep., 157, and other cases.

### 10.—Same—Rule Stated—Intoxicating Liquors—Temporary Insanity.

Article 41, Penal Code, has eliminated intoxication and temporary insanity produced by the voluntary use of intoxicants as a defense for crime.

### 11.—Same—Insanity—Charge of Court—Requested Charge.

Where the court's charge presenting the issue of insanity and a requested charge allowed fully and completely presented this issue as made by the testimony, there was no necessity to give the other special charges requested on this issue.

### 12.—Same—Irresistible Impulse—Rule Stated.

The doctrine of insanity or non-accountability from an irresistible impulse alone has never received the sanction of this court. Following Kirby v. State, 68 Texas Crim. Rep., 63, and other cases.

### 13.—Same—Insanity—Reasonable Doubt—Rule Stated—Burden of Proof.

The doctrine that the State must prove the person on trial sane beyond a reasonable doubt has never received the sanction of this court; when the State

has proved defendant's guilt beyond a reasonable doubt and he seeks to relieve himself of punishment by proof that he was insane, the burden of proof is upon him to show by a preponderance of the evidence that his mind was in such condition that he did not know right from wrong as to the particular act committed. Following Webb v. State, 9 Texas Crim. App., 490, and other cases.

14.—Same—Argument of Counsel—Rule Stated.

Comments upon testimony by counsel legitimately in evidence and deductions drawn therefrom are never improper, and there was no error in the court's refusal to instruct the jury not to consider the argument of counsel which was based upon the testimony.

15.—Same—Argument of Counsel—Intemperate Invective.

Where defendant's only defense was insanity, there was no reversible error in the closing argument of State's counsel in which he said that when there is no other defense the jury would always find a resort to the low-down, cowardly, stinking defense of insanity, although this language was intemperate. Following Glasgow v. State, 50 Texas Crim. Rep., 635, and other cases. Davidson, Judge, dissenting.

16.—Same — Additional Charge of the Court — Statutes Construed—
    Practice.

Under article 754, Code Criminal Procedure, there was no reversible error in permitting the jury to propound the question if there was any difference between capital punishment and death, which the court answered in writing, having the stenographer to write out the questions and the court's answer thereto, the trial judge signing the same and delivering it to the jury.

17.—Same—Misconduct of Jury—Intoxicating Liquors—Rule Stated.

The fact that a juryman in eating his meal drank a glass of beer as a part of his meal presents no error; it is only where some of the jurors become intoxicated that the drinking of intoxicants becomes reversible error. Following Jack v. State, 26 Texas, 1, and other cases.

18.—Same—Sufficiency of the Evidence—Function of Jury.

Where, upon trial of murder, the defendant made no other defense than insanity and the court admitted no improper evidence on this issue and fairly submitted the same to the jury, a conviction assessing the death penalty is sustained although the court if acting as a jury might have been loath to assess the death penalty. Davidson, Judge, dissenting.

Appeal from the Criminal District Court of Harris. Tried below before the Hon. C. W. Robinson.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Heidingsfelders, M. J. Hickey,* and *C. H. Cherenowsky,* for appellant. —On question of the insufficiency of the evidence: Webb v. State, 5 Texas Crim. App., 596; Hunt v. State, 33 Texas Crim. Rep., 252; Sims v. State, 99 S. W. Rep., 555; Wooten v. State, 51 Texas Crim. Rep., 428, 102 S. W. Rep., 416.

Upon question of charge of insanity: Clark v. State, 8 Texas Crim. App., 350; Smith v. State, 19 id., 95; Smith v. State, 22 id., 316; Giebel v. State, 28 id., 151; Smith v. State, 31 Texas Crim. Rep., 14; Hurst v. State, 40 id., 378; Nugent v. State, 46 id., 67; McCullough v. State, 94 S. W. Rep., 1056; Stanfield v. State, 94 S. W. Rep., 1057.

On question of argument of counsel: Walls v. State, 69 Texas

Crim. Rep., 317, 153 S. W. Rep., 130; Himmelfarb v. State, 174 S. W. Rep., 586; Mooney v. State, 176 S. W. Rep., 52.

Upon question of admitting in evidence the appearance of. defendant: Tubb v. State, 55 Texas Crim. Rep., 606; Burt v. State, 38 id., 397; Williams v. State, 37 id., 348; Merritt v. State, 39 id., 70.

On question of non-expert testimony: Lovelady v. State, 14 Texas Crim. App., 545; Harris v. State, 37 Texas Crim. Rep., 441.

On question of additional charge: Conn v. State, 11 Texas Crim. App., 390

*C. C. McDonald,* Assistant Attorney General, *John H. Crooker,* and *E. T. Branch,* and *T. J. Harris,* for the State.—On question of non-expert testimony: Turner v. State, 61 Texas Crim. Rep., 97; Rodgers v. State, 159 S. W. Rep., 40, and cases cited in opinion.

On question of court's charge on insanity: Shaffer v. State, 68 Texas Crim. Rep., 162.

On question of delirium tremens: Perales v. State, 72 Texas Crim. Rep., 176.

On question of defendant's failure to testify: Dougherty v. State, 59 Texas Crim. Rep., 464, and cases cited in opinion.

On all other questions counsel cited cases in opinion.

HARPER, JUDGE.—Appellant was convicted of the murder of his wife and the death penalty assessed.

The proof would show that deceased being dissatisfied with the home appellant carried her to, a place near Crosby, in Harris County, said she was going to return to her father's, in Waller County. Appellant in his confession says that the kinsfolk of deceased, before this, had been trying to get his wife away from him, and when, on this morning, she said she was not satisfied with the home he had provided, and that she was going back from where she came, he thought she meant it and he could not control himself, and he went in another room, got a shotgun and shot and killed her. On this trial he. made no defense of his action further than to plead he was insane, and, therefore, not responsible for his acts. On this plea of insanity appellant introduced proof of his acts and conduct from his childhood up to and including the day of the homicide, and, by his father, of his conduct shortly after the homicide. All this evidence of queer conduct and acts during the various periods of his life's history was introduced by appellant to prove that he was insane at the time of the killing of his wife. Appellant does not rely upon any specific cause at the time of or just prior to the homicide to prove that his mind was temporarily unbalanced at the time of the homicide, but appellant begins with his childhood days and takes acts and conduct then occurring, and through all the various years of his life to prove that at the time, at least, he was of unsound mind and incapable of knowing right from wrong. And as this inquiry embraced this broad a scope, in rebuttal of this testimony, certainly it was permissible for the State to show, if it

could, that at no period of his life was appellant's mind so unbalanced as to render him irresponsible for his acts. As the appellant relied on such facts to show that he was mentally unbalanced at the time of the commission of the offense, the State could introduce the same character of proof as tending to show that he was not mentally unbalanced at the time of the homicide, and was sane at that time.

In bills of exception Nos. 1, 6, 9 and 10 objections are made to the introduction of the testimony of Drs. York, Ross and Martin. As these bills are all of the same character we will state only what one of the physicians testified. After qualifying as an expert on insanity, Dr. Martin testified: "I talked to this defendant a number of times, talked to him about first one thing and then another; talked to him about his condition, how he felt and how he was getting along, what caused him to get into this trouble and first one thing and another as it would come up, talked to him on general subjects, the weather, the war or anything of that kind, current events. The day before this case started last Wednesday I was present when he was talking about his troubles and his early boyhood and life generally, the day before this case started; he has made to me a detailed statement about the events of his life, from his boyhood and up to where he went to school, what he had done, where he had worked and the name of his children and wife and went into a history of his mother and father; he went into those subjects at length; in my opinion he is absolutely sane; I know that he knows it is wrong to kill anyone; if a person had a slip of the mind for an hour or a day, and then regains consciousness he would not know anything that took place during that interval; he could not detail anything that he saw or heard during that interval of the disease of his mind; if this defendant several days after his wife died made a detailed statement of all the facts and movements of the man and of his wife and his children during the day that she died, during the very time that she died, in other words, if he made a detailed statement of those things, would say that he was absolutely sane at the time he committed the offense; the defendant here in the court-room is a changed man from his appearance and conduct and his actions in the jail since the day before yesterday; he seems to be taking the rôle of melancholy; he is ·not suffering from any such disease as that. I observed him closely last night and this morning and a man suffering from melancholia is absolutely relaxant. I mean by that he don't bat an eyelid; observed him last night and this morning and he does not look it at all; it is absolutely my opinion that he is trying to simulate melancholy or insanity; simulate means to take off, make off, pretend, malingering."

Appellant objected to this testimony on the ground that the conduct of appellant in the court-room was not a proper subject of inquiry to be considered by the jury, and the manifest purpose of the questions propounded was to elicit from them and have them present to the jury a confession of the defendant's conduct. while in jail and his conduct

while in the court-room, and the defendant had not offered any evidence for the purpose of showing insanity, his looks, appearance, conduct, expression or gestures, during the progress of the trial or while he was in jail, and this was in effect causing the defendant to testify against himself. All the objections here urged were specifically passed on by this court in Tubb v. State, 55 Texas Crim. Rep., 606, and decided adversely to his contention. In that case the objection, among others, was urged as here: "Because it is an effort on the part of the State to use the appearance and conduct of the defendant in the court-room against him when he was not placed on the witness stand." The court in that case said: "The position maintained by appellant was in effect decisively ruled adversely to him in the case of Burt v. State, 38 Texas Crim. Rep., 397." In that case Dr. Davis was placed on the stand as a witness for the State and was permitted to testify that the defendant was simulating, that is, playing a part and not acting naturally. This testimony was held not inadmissible. Again, in that case Dr. Wooten was permitted to testify that while Burt was in jail he had gone to the jail, had taken the dimensions of his skull, and while there examined the defendant, talked to him, looked at him and observed him. This was held not to be error. Again, in that case Jack Hughes was placed on the stand for the State, by whom it was shown that he had noticed the fact that defendant had struck his head against the window frame the day before as he passed through the window, and that it was the only time defendant had done so in the many times he had passed through said window during the trial. This was held not to be error. Summarizing on the question generally the court uses the following language: "We are not informed of any case holding that because a prisoner is in jail, unwarned, therefore his conduct can not be observed, so that the expert can give an opinion as to his sanity. It would be a remarkable case, indeed, in which the accused, if insane, would simulate sanity. We can not comprehend how the fact that he was in jail could affect his conduct in this particular in any manner, and, therefore, the ruling of the court in regard to the testimony of Dr. M. M. Smith was correct. See Adams v. State, 34 Texas Crim. Rep., 470. See also Cannon v. State, 41 Texas Crim. Rep., 467. Again, as we have seen, 'The conduct and acts of defendant while in jail may be given in evidence, as a basis for an opinion by a non-expert as to defendant's sanity, though defendant was not warned that his acts and conduct would be used as evidence against him, as they are not a confession.' Adams v. State, 31 S. W. Rep., 372. The admission of this testimony could in no proper sense be held to be a reference to the failure of the defendant to testify, but was merely the expression of an opinion by the expert, based on the testimony developed at a hearing and having reference to the conduct, appearance and demeanor of the defendant then present."

Appellant does not dispute this is the rule announced in the Tubbs case, but says that the Burt case is not authority for such ruling, in that in the Burt case the court stated that the defendant had "offered

in evidence the manner and appearance of the defendant, the way he demeaned himself during the trial, as evidence of insanity at the time of the trial," and the court gave this as a basis for its holding. The record discloses that in the Burt case the defendant did not testify as a witness any more than did appellant in this case. It may be in that case the defendant's counsel called attention to his acts and conduct during the trial, while in this case it is not shown they did so, yet his acts, conduct and demeanor during the trial were plainly evident to the jury. By no conceivable freak of the imagination could it be conceived that his acts, conduct and demeanor during the trial were not and would not be noticed by the jury, and considered by them in passing on the issue of his insanity, and we think the Tubb case was correct in holding that experts could take into consideration, in giving an opinion as to his sanity, his acts, conduct and demeanor on the trial as well as his acts, conduct and demeanor on other occasions. Guerrero v. State, 75 Texas Crim. Rep., 558, 171 S. W. Rep., 731; Kirby v. State, 68 Texas Crim. Rep., 63, 150 S. W. Rep., 455, and cases cited in Branch's Crim. Code, under art. 40, Penal Code (the advance sheets with which we have been favored). This is not only the rule in this State but also in other jurisdictions. Wigmore in his work on Evidence, section 1160, says: "On the issue of insanity, it was from an early period regarded proper that the person should appear before the chancellor for inspection. Since the chancellor is upon the subject of insanity no less a layman than is a juryman, it seems equally proper, and has been perhaps equally long established, that an inspection by the jury should be an allowable mode of acquiring knowledge on the issue of insanity. It seems to be universally accepted that, in whatever form the issue of insanity may be presented, the jury may take into consideration the behavior of the person as observed by them," citing a great number of authorities.

Appellant also contends that it was improper to permit these experts to testify that if a person is laboring under a sudden attack of insanity, mental aberration, brought on by trouble, or anything else and had a slip of his mind for an hour or a day, he would not know anything he did, anything that took place or happened during that time, when his mind resumed its normal condition. This testimony was clearly admissible. These doctors had qualified as experts on insanity, evidencing that they had often treated this mental disorder, and were familiar with and informed of conditions under such circumstances. And it was also permissible for them to state that one who was insane to the extent of not knowing right from wrong, would not and could not detail the incidents attendant upon the homicide, and the events that happened just before and subsequent to the homicide. It was in evidence in this case that appellant had detailed all these incidents a week after the homicide, and the other evidence demonstrates that he correctly did so.

Bills of exception Nos. 3, 5, 15, 22 and 23 are objections to the admissibility of the testimony of the witness Tom Smith, the jailer, and

to various portions of this witness' testimony. This witness testified: "I am a deputy sheriff; have known defendant ever since he has been in jail, that has been for some time. Have been a deputy sheriff five or six years; have had charge of him since this trial, have been around him; in a way I have had an opportunity to observe him in jail, his conduct in the jail; I go to the jail every morning; saw him every day; I have seen him in jail by serving different papers on different persons and he was one among many, that is the only way I have observed him; he does not conduct himself in jail like here in the court-room; from my observation of him in jail he is like any other ordinary prisoner, never noticed anything peculiar about him; during the trial of this case have transferred him from the jail to the courthouse and back and talked to him. I talked to him last night; I asked him if he was ready to go back to jail, and he said, yes, sir, and Mr. Milam was standing there and I said, 'Frank, suppose we don't handcuff you, are you going to run?' He said, 'No use to run, you will get me anyhow.' Have noticed him in the hold-over, today at noon, his conduct in there; took him from there to the sheriff's office and he sat around in the office smoking a couple of cigars, came on back in smoking a cigarette in there; three or four of these witnesses out there came up there to the loor and talked to him through the door. I have handled lots of prisoners and I found him to be an ordinary prisoner like any other man charged with murder; have noticed nothing about his conduct, his conversation or anything else that would lead me to believe there was anything mentally wrong with him in any way."

If the conversation detailed by the witness had any bearing on the question of his guilt or innocence of the crime charged against him, it would be clearly inadmissible, but as it did not and could not have any bearing on that issue, but would only have a tendency to aid the jury in passing on the question of his plea of insanity, the testimony was admissible. (Adams v. State, 34 Texas Crim. Rep., 470; Burt v. State, 38 Texas Crim. Rep., 397; Cannon v. State, 41 Texas Crim. Rep., 486; Reinhard v. State, 52 Texas Crim. Rep., 624.) Neither was it improper to permit the witness to state that the appellant did not conduct himself in jail like he did on the trial, and that he had never noticed anything peculiar about him outside of the court-room. These various bills were qualified by the court in approving them. The court says: "The witness was not permitted to give an opinion as to the sanity of the defendant. He testified that he had known defendant ever since he had been in jail right after the homicide, that he went to the jail every day, that he saw the defendant every day and he had conversations with him and had noticed defendant while in the hold-over during the trial, and the testimony was permitted to be adduced to support the theory that he was simulating insanity during the trial and before the jury. The witness was merely permitted to testify, having shown sufficient acquaintance to do so, that he never noticed anything peculiar about defendant's conduct, appearance or speech that

would lead him to believe there was anything wrong mentally with the mind of defendant." As qualified the bills present no error.

Appellant also in various bills objected to the testimony of Miss Annie Stasny, Tom Gasner and Joe Repka. These witnesses all testify to having known appellant for a number of years. Miss Stasny testified she was a sister of the deceased and often visited her sister at the home of appellant during a period of fifteen years. Tom Gasner said he had known appellant for four years and lived a neighbor to him, and frequently met and talked to him. That he had seen him every week for four years immediately preceding the trial. Joe Repka testified he had known appellant for eighteen or twenty years. That during a portion of the time they worked adjoining farms, and during that time met about every day. Saw him about every week after appellant began working in the saloon at Brookshire. Each of these witnesses detail sufficient facts and show sufficient acquaintance with him as authorized the court to permit them to state that during their association and acquaintance with appellant there was nothing that led them to believe there was anything wrong with his mind. We had the question before us in the case of Jordan v. State, 64 Texas Crim. Rep., 187, when a non-expert witness will be permitted to express an opinion as to the sanity or insanity of a person on trial, and we there reviewed the authorities. We do not deem it necessary to do so again, but under the rules there announced the court committed no error in admitting the testimony of the witnesses named above and complained of in the bills of exception stated.

There was no exception reserved to the charge of the court seeking to point out any errors in the charge as given, but exceptions were reserved to the failure of the court to give some six special charges requested. One of them requested the court to charge the jury if they believed the defendant was afflicted with disease, and that such disease, taken in connection with the long continued use of ardent spirits, and with the recent use of ardent spirits, produced temporary insanity, the jury should acquit. There was no evidence calling for such a charge. There was no evidence that appellant was suffering from any disease at the time he killed his wife, nor at the time of this trial.

As the court fully instructed the jury they could not consider the failure of the defendant to testify as a circumstance against him in language frequently approved by this court, there was no error in refusing the special charge on this issue.

There was no evidence that appellant was suffering from delirium tremens or mania a potu at the time of the homicide, therefore there was no error in refusing the charge in regard to appellant being permanently insane at the time of the homicide from the long continued use of intoxicating liquors. Our Code, in article 41, has eliminated intoxication and temporary insanity produced by voluntary use of intoxicants as a defense to crime. There being no evidence of what is defined as "settled insanity" from the use of intoxicants in the record before us the court did not err in refusing to submit such issue. Delgado v.

State, 34 Texas Crim Rep., 157; Ex parte Evers, 29 Texas Crim. App., 539, and Evers v. State, 31 Texas Crim. Rep., 318.

The court's charge in presenting the issue of insanity, and special charge No. 3 given at the request of appellant, fully and completely present this issue as made by the testimony to the jury, therefore there was no necessity to give the other special charges requested on this issue.

The doctrine of insanity or non-accountability from an "irresistible impulse" alone has never received the sanction of this court. Hurst vs. State, 40 Texas Crim. Rep., 378; Cannon v. State, 41 Texas Crim. Rep., 467; Lowe v. State, 44 Texas Crim. Rep., 224; Thomas v. State, 55 Texas Crim. Rep., 293; Kirby v. State, 68 Texas Crim. Rep., 63, 150 S. W. Rep., 455.

Neither has the doctrine that the State must prove the person on trial sane beyond a reasonable doubt ever received the sanction of this court. While such a rule prevails in some jurisdictions, yet a large majority of the courts of final resort in the United States adhere to the rule recognized and enforced by the decisions of this court—that when the State has proven appellant guilty of the crime charged beyond a reasonable doubt, and he seeks to relieve himself of punishment for having committed the crime by proof that he was insane, that the burden is upon him to show by a preponderance of the evidence that his mind was in such condition that he did not know right from wrong as to the particular act committed. Suppose before announcing ready for trial a complaint had been filed charging that he was insane, and a trial had on that issue prior to this trial. Would anyone contend that it would be necessary to prove that appellant was insane *beyond a reasonable doubt* before a jury would be authorized to so find? We do not think so, but they would be authorized to find him insane upon a preponderance of the testimony, and because he elected to have no such trial, and interposed the plea as a defense to the crime, it would not and should not change the rule of law as applicable to this issue alone. This matter was thoroughly discussed by this court in the case of Webb v. State, 9 Texas Crim. App., 490, and King v. State, 9 Texas Crim. App., 515, and in those cases it was held that the doctrine the State must prove beyond a reasonable doubt that a person was sane, not to be the correct rule. Judge Hurt entered his dissent to such holding in the King case, supra, but the rule as announced by Judges White and Winkler in the Webb case has always prevailed in this court, and in subsequent decisions adhered to by Judge Hurt as well as the other members of the court. This question is no longer an open one in this State, and we think the rule a correct one under the provisions of our Penal Code and Code of Criminal Procedure

In bill of exceptions No. 8 it is made to appear that counsel for the State in argument said: "While the defendant was in a saloon drinking good whisky, his wife was out in the field picking cotton to support her children," and the court refused to instruct the jury not to consider the remarks. Such remarks had basis in the testimony. Witnesses for appellant testifying to conditions tending to show he was

insane, testified to him tending bar for one of the witnesses for some two years; that at times he became intoxicated, while other witnesses testified that his wife had picked cotton for them while appellant·was tending bar. Comments upon testimony legitimately in evidence, and deductions drawn therefrom, are never improper.

In bill No. 17 it is shown that counsel for the State in the closing argument said: "When there is no other defense, you will always find them resorting to the low-down, cowardly, stinking defense of insanity." Appellant's only defense was that he was insane. So reference to the fact that this was his only defense was legitimate. If the remarks were improper, it consists in the fact that he termed this defense a "low-down, cowardly, stinking defense." In the American & English Ency. of Law and Practice, vol. 5, page 366, it is said: "Just and fierce invective, based upon the facts in evidence and all legitimate inferences therefrom, is not discountenanced by the courts. Thus new trials have been refused when the error assigned was the application to parties or witnesses by counsel in argument of the terms 'assassin, or murderer, fiend or scoundrel, low-down whore, liar, thief, or robber, tramps,' and other denunciatory epithets apparently warranted by the evidence in the case," citing cases from almost every State in the Union, including many from this court, towit: Glasgow v. State, 50 Texas Crim. Rep., 635; Tune v. State, 49 Texas Crim. Rep., 445; Choice v. State, 54 Texas Crim. Rep., 517; Vann v. State, 48 Texas Crim. Rep., 11; Martinez v. State, 57 S. W. Rep., 838; Mason v. State, 81 S. W. Rep., 718; Lowe v. State, 78 S. W. Rep., 691; Johnson v. State, 53 S. W. Rep., 105; Miller v. State, 47 Texas Crim. Rep., 329; Ball v. State, 78 S. W. Rep., 508; Drye v. State, 55 S. W. Rep., 65. However, vituperation and personal abuse of a person on trial, calculated to inflame the passions and prejudice of a jury, disconnected with the trial, is highly improper and will not be tolerated. The remarks in this instance had no further reference to appellant than to characterize the defense interposed, and could and would only be taken by the jury as the opinion of counsel of such defense, and is not of the character that would authorize us to reverse a case because of such intemperate remarks.

The only other bill of exceptions in the record complains of the action of the court in permitting the jury to propound certain questions, which he had the stenographer take down in writing, and then had the stenographer to take down his reply to such questions, which were then handed to the jury in the following form:

"Court: What is it you want to know of the court? Jurors: Some of the jury want to know if there is any difference between capital punishment and death,—the definition of capital punishment. Court: A capital offense means one that the death penalty can be inflicted in. Any offense for which the death punishment can be assessed is a capital offense. Capital punishment means the excessive punishment—the death punishment. Juror: A man that voted capital punishment, that would mean to inflict the death penalty. Court: Capital punishment is the death punishment. C. W. Robinson, Judge."

Article 754 provides that the jury, after having retired, may ask for further instructions touching any matter of law. The jury shall appear in a body, and through their foreman, either verbally or in writing, state to the court the particular point of law upon which they desire instruction, and the court shall give such instruction in writing. This statute was complied with in this case. The fact the court permitted the jury to propound the question orally was authorized by this article, but he gave them no oral answer. He had the stenographer write out the question and his answer thereto, signed same, and this written instruction was delivered to the jury. All the court did was at the request of the jury define a capital offense and capital punishment. He could have refused to define these terms had he so desired, but as he saw proper to answer the questions, and defined the terms properly, no error is presented.

The only other question presented to the court is on affidavit, attached to the motion for new trial, of Mr. Crenoski, of counsel for defendant, in which he says: "That he received information from a reliable source that on the evening of the 9th of April, while the jury was at their supper, some of the jurors drank one or two steins of beer." The fact that a juryman in eating his meal drank a glass of beer as a part of the meal presents no error. It is only where some of the jurors become intoxicated, that the drinking of intoxicants becomes reversible error. Jack v. State, 26 Texas, 1; Tuttle v. State, 6 Texas Crim. App., 556; Rider v. State, 26 Texas Crim. App., 334.

The death penalty being assessed in this case we have carefully reviewed each assignment in the record. Appellant made no defense other than he was insane, and, therefore, not responsible for his act. The court admitted no improper evidence on this issue, fairly submitted it to the jury, and the jury found that he was sane, and from the testimony adduced at the hearing it is not surprising that they did so find. Under the evidence the writer, had he been a member of the jury, would have been loath to assess the death penalty. It is true the record discloses no justification for the act, and we are firmly convinced that appellant was not insane. Yet he was a man given to drinking intoxicating liquors; had drunk some whisky that morning; he had been worried and harassed by the lingering illness and death and burial of his oldest girl; he believed that some people were trying to separate him and his wife, and when she told him she was going to quit him and go home, he was in that frame of mind which doubtless rendered him reckless of consequences, and while in such frame of mind he shot and killed his wife. There were, so far as this record discloses, no antecedent menaces or grudges on his part. It was an act done from an impulse arising from no sufficient or just cause. It is true our law takes no notice of length of time in the forming of an intent to kill. It may be formed in an instant of time, and if formed, it is murder. There is no doubt of appellant's guilt of murder and he should be severely punished, but whether or not the circumstances called for the highest punishment known to the law is a matter of doubt in

the mind of the writer. This is a question, however, that the law has confided to the jury, and as there is evidence authorizing a finding of a fixed and determined intention to kill upon a provocation that should not have provoked that degree of anger or rage as would render appellant incapable of not knowing what he was doing and the consequences of his act, we do not feel authorized to disturb the verdict of the jury because of the punishment assessed.

The judgment is affirmed. *Affirmed.*

DAVIDSON, JUDGE.—I am of opinion this judgment ought not to be affirmed either on the law or the facts, and may write on motion for rehearing.

DAVIDSON, JUDGE (dissenting).—Insanity was the defense relied upon by appellant. Upon that issue the case of defendant was mainly fought in the trial court. No contest was made as to the fact that appellant killed his wife. That issue gathered about it many facts upon which the jury had to pass. Kindred to, a part of, and incidental to insanity, was the mental condition and the facts and circumstances attending the homicide which indicated the mental condition, if the evidence should not be held to show insanity. This was of supreme moment to the defendant as it was to the fairness of the trial and the justness of the verdict and judgment. That issue brought forcefully the question of the mental status of the accused at the time that he fired the shot that took the life of deceased. It placed it in the forefront of this tragedy. This evidence shows the act was surrounded by facts that indicate appellant was not in condition mentally to have that cool, sedate and deliberate mind which would manifest such mental condition or the degree of malice which would justify, demand or authorize the jury to assess the death penalty.

I can not believe under this record that the defendant ought to be hanged, even though he was not insane at the time he slew his wife. These two questions, however, were in the case—insanity, first, and, second, a want of such coolness, sedateness and deliberation as proved that a capital crime had been committed. There were no former grudges or menaces incident or prior to the killing. It is true appellant slew his wife, but all the circumstances show the slaying occurred without deliberation, and under a rash, sudden impulse. The evidence shows that he had not anticipated his wife's acts, conduct and statements and her fixed determination to leave and not live with him, until immediately before the homicide. He sought to persuade her not to take that step. He threw his arms around and begged her. She, however, informed him of her fixed determination to leave him and go to her parents. He fired the fatal shot at once. He had prepared a new home for their future residence. Her dissatisfaction with this home led her to quit her husband. She disapproved sharply the home he had secured, stating she would not live in it. He seized a gun, fired the fatal shot, and then cut his throat with a view of taking his own

life.  His life, however, was saved by timely assistance.  Just prior to this he had lost his little child, and on account of the heavy expenses incidental to its lingering illness he sold his home to meet that indebtedness.  The facts will further show, without recapitulation substantially, that he had been worried and harassed and anxious about his child; not only so but about his wife, who had permitted the transfusion of blood from her body into that of her sick child to save its life.  Some of these matters came suddenly upon him unexpectedly, and whether he was insane or not, it certainly showed a want of the ingredients that our law fixes as a basis for capital punishment.  The determination to kill formed in a mind thus situated and environed, and so suddenly executed ought not to constitute basis for death penalty.  If insanity be ignored as an issue, the facts, as I understand them, do not show any coolness of deliberation, premeditation or preparation for the homicide, and such malice as justifies capital punishment is absent.  The fact that a woman is killed is not per se or perforce evidence that death penalty should be awarded.  There may be absence of adequate cause that produces sudden passion to reduce to manslaughter, but still there must be evidence that would constitute a capital offense in order to authorize a capital verdict.  If under such circumstances his mind could be cool, sedate and capable of cool reflection, it would be a remarkable incident.  In this connection, I wish to quote from the prevailing opinion written by Judge Harper for the majority in this case, as follows:  "Under the evidence the writer, had he been a member of the jury, would have been loath to· assess the death penalty.  It is true the record discloses no justification for the act, and we are firmly convinced that appellant was not insane.  Yet he was a man given to drinking intoxicating liquors; had drunk some whisky that morning; he had been worried and harassed by the lingering illness and death and burial of his oldest girl; he believed that some people were trying to separate him and his wife, and when she told him she was going to quit him and go home, he was in that frame of mind which doubtless rendered him reckless of consequences, and while in such frame of mind he shot and killed his wife.  There were, so far as this record· discloses, no ·antecedent menaces or grudges on his part.  It was an act done from an impulse arising from no sufficient or just cause. ·  .  .  There is no doubt of appellant's guilt of murder and he should be severely punished, but whether or not the circumstances called for the highest punishment known to the law is a matter of doubt in the mind of the writer."  I agree with the above statement as far as it goes, but think the verdict ought not stand.  In this connection I wish to state that appellant, upon shooting his wife, cut his own throat, thus seeking to destroy his own life; and on the morning of the occurrence, and before· they reached their home he stopped at the doctor's office and had the wound of his wife treated.  It was the wound made when the transfusion of blood from her to the child occurred.  This showed solicitude and attention to her comfort, health and happiness.

I shall not enter into a discussion of the mental status of a suicide

further than to say that fact does not afford evidence such as would lead to the belief that the suicide was in such mental condition as to justify the conclusion that he was legally guilty of capital homicide. I, therefore, can not concur in affirming the judgment on the facts. I do not believe the life of this man should be taken by solemn trial upon this character of evidence. I have a great respect for the verdict of a jury. It is a part of the law of Texas that they should be the exclusive judges of the facts proved, the credibility of witnesses, and the weight to be given the testimony. It is the province of the court to charge the law, and this question is as exclusive in the court as it is in the jury to pass on the facts. One is no more solemn than the other. One is no more binding than the other. We unhesitatingly reverse judgments where the court has ruled erroneously to the detriment of the defendant either in his charges or in the admission and rejection of testimony, yet the statute says that the jury shall receive the law from the court and be governed thereby. The jury may pass on the facts and are required to do so, and where the evidence shows beyond a reasonable doubt the guilt of the party of the offense of which he is convicted, this court should sustain that verdict, or if upon appeal it appears to us with reasonable certainty that defendant is thus guilty, the verdict should be sustained, but the jury has no more authority, legal or otherwise, to convict on insufficient facts than has the court to authorize a conviction on an erroneous charge or admission of illegal evidence. This court is empowered by the statute and required by its terms to reverse and remand, or reverse and dismiss, or affirm, as the facts and the law and justice require, but it all hinges around the great central proposition that the accused is entitled to a fair trial by an impartial jury, and the record must show that he had had the fair trial, and in addition the facts must sustain the verdict rendered. This court is not powerless to remedy the errors even of a jury, and our reports are full of cases where we have reversed for want of sufficient evidence. It is a part of the solemn duty of this court to prevent injustice as well upon the testimony as upon the law. The obligation is as binding on one proposition as upon the other. A fair trial and a just verdict on the law and the facts is the ultimate criterion. Both law and facts must overcome the presumption of innocence and reasonable doubt. I can not agree to sanction this verdict on this record.

The question of *temporary insanity* was a serious issue on the trial, and testimony was introduced to sustain it. He may or may not have been *temporarily insane*. The majority opinion, as did the verdict of the jury, finds that appellant was not insane. The majority opinion finds that the killing occurred under sudden impulse, but finds no error in the rulings of the trial court in regard to the issues of law or fact. I can not agree with their conclusion with reference to some of the questions arising on the issues of insanity. It will be noticed from the record that the only phase of insanity set up by appellant was that he was insane or crazy at the time of the homicide. There was no claim made and no issue tendered by him that he was insane at the

time of the trial, or that he became insane after the commission of the offense, as set forth in articles 39 and 40 of the Penal Code. Article 39 of the Penal Code provides thus:

"No act done in a state of insanity can be punished as an offense. No person who becomes insane after he committed an offense shall be tried for the same while in such condition. No person who becomes insane after he is found guilty shall be punished for the offense while in such condition."

Of the three phases set out in the above quoted article only one was presented by appellant. He made no other issue on the question of insanity, presented no contention, and introduced no fact that he was insane at the time of the trial, or after he "committed the offense." He presented the sole issue on that matter, that he was insane at the time he committed the act. To this end he introduced evidence as shown by the record. The State was permitted to introduce evidence of varying character to show he was not insane subsequent to the homicide; that he was not insane while he was in jail, and not insane during his trial. The State was permitted to prove that he was simulating insanity during the trial before the jury. Timely objection was interposed to all this but promptly overruled by the court. *Temporary insanity* was the only issue presented by the defendant. The issue of permanent insanity was *not* in the case. On the issue as to temporary insanity the evidence must be more particularly and specifically directed to the mental status of the accused at the time and with reference to the particular act charged or committed. Giebel v. State, 28 Texas Crim. App., 151; Frizzell v. State, 30 Texas Crim. App., 42; Fisher v. State, 30 Texas Crim. App., 502.

I wish to notice two cases, Burt v. State, 38 Texas Crim. Rep., 397, and Tubb v. State, 55 Texas Crim. Rep., 606, cited in support of the ruling of the trial court admitting acts and conduct of appellant after the homicide, while in jail, and during the trial, and that he was then simulating insanity, and also to sustain expert testimony covering the same time. Other cases are also cited, but I notice casually the Burt and Tubb cases because of their prominence. Burt, in his trial, or his attorneys for him, set up insanity generally, and he further set up insanity at the time of and before his trial and after the homicide. In fact, his insanity as shown by that record, made an issue in the case, covered his life. I do not purpose to go into the facts of that case as the report of the case shows it with sufficient distinctness. It was, therefore, proper for the State to meet the issue as presented by Burt in that case. The State may meet any phase of an issue that is presented, and so may the defendant, but we have various phases of insanity in Texas, but as only one is relied upon in the trial, the others can not be issues. As I understand the record, the defendant objected by all legal methods he could command, and presents it to this court for reversal, that such testimony was introduced against him to meet his plea of temporary or partial insanity. His case was fought on the proposition that he was crazy only at the time of the homicide. Had

he urged permanent insanity, as did Burt, in his trial, the State could meet it by such evidence as was at its command, but the State can not set up such issue for the purpose of showing it did not exist. It would be a straw-man built by the State to be destroyed by its own testimony— a false issue with false effect. The issue in the Tubb case, supra, was that he was a paranoiac. The general doctrine of paranoia, without going into detail, is a growing, developing phase of insanity. If once it has fastened itself upon the mind, it remains and continues to grow and develop. If a patient should become free of insanity, it would seem to prove that he was never affected with paranoism. Of course, it is unnecessary here to go into the different phases of this peculiar class of insanity. It was not in the case. These two cases, Burt and Tubb, can not be legitimately used in this case. They do not bear upon the issue here. I do not care to follow these lines of discussion. I have written briefly my views showing, as I understand the record, why the case should not be affirmed, first, on the facts, and, second, on the rulings of the court in reference to insanity. I have not discussed his guilt otherwise than as it pertains to the death penalty.

There is another phase of the case which I have not discussed. It was the speech or argument of one of State's counsel complained of in the record and by bill of exceptions. I am not clear that I understand just when a speech is reversible error and when it is not, but I think that the speech in this case was wrong, and appellant did what he could to get rid of it by objections, requested charges, etc., but it proved of no avail. If these steps had not been taken, it might be said, under some of the cases, that he should have asked special charges and taken other steps to rid himself of the obnoxious speech, but appellant did all this, and the speech is certainly, or ought to be held at least, outside of the pale of legitimate argument. As I stated, I do not care to elaborate my views. I have stated briefly these reasons, and I believe the case ought to be reversed and the cause remanded for another trial.