**Jimmy Lee GRANT, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 44211.**

Court of Criminal Appeals of Texas.

Nov. 9, 1971.

Milburn, Hirsch & Warner, by H. Thomas Hirsch, Odessa, for appellant.

John H. Green, Dist. Atty., and J. A. Bobo, Asst. Dist. Atty., Odessa, and Jim D. Vollers, State's Atty., Austin, for the State.

## OPINION

ONION, Presiding Judge.

This is an appeal from a conviction for assault with intent to rape. The punishment, enhanced under the provisions of Article 63, Vernon's Ann.P.C., was assessed at life by the court following a guilty verdict.

In his first three grounds of error appellant complains of the admission of a doctor's testimony concerning the results of a test of a vaginal smear taken from the 10 year old prosecutrix since there was no

clear chain of custody, no showing he performed the test himself or that it was done under his supervision or control, and a possibility of mistake on the part of the lab technician.

Dr. John L. Clark testified that on July 15, 1969, he examined the prosecutrix and found her vagina was irritated but the hymen intact. He related the "smear was taken by me personally and taken to the lab but the exam was made by the technician" "under my control." Thereafter he testified the test showed "there was some sperm cells in the fluid and a little bit of infection."

■ It would not appear that the court erred in admitting such testimony since a doctor can testify from laboratory records as to the results of a test by another person where analysis was under his supervision or control. Jackson v. State, 159 Tex.Cr.R. 228, 262 S.W.2d 499; Meadowes v. State, Tex.Cr.App., 368 S.W.2d 203.

■ A study of the record indicates that what appellant really complains about is the failure of the court to strike the doctor's testimony after it was developed on cross-examination that the doctor did not actually see the test performed by the technician, that only a report and not the smear was returned to the doctor and that it was "conceivable" the technician "could have gotten the smears and samples mixed up." There is nothing in the record to show whether the laboratory belonged to the doctor, was a private laboratory or just what, or whether in fact there were other smears or samples present when the analysis was made. Under the circumstances presented, the testimony developed went to the weight to be given to the doctor's testimony rather than calling for its exclusion.

Appellant misreads Clifton v. State, Tex.Cr.App., 399 S.W.2d 353. In setting forth the facts there presented the court did not indicate that these same facts must always be present before a doctor may testify when he did not personally perform the analysis.

■ Next appellant contends the trial court erred in not requiring the lab technician to testify to the results of the analysis of the vaginal smear. No objection or request based upon this claim was ever presented or urged to the trial court. The ground of error is not briefed, see Article 40.09, Sec. 9, Vernon's Ann.C.C.P., and the appellant does not explain whether the court, on its own motion, should have called the witness, or should have granted the motion to strike until the State called the witness, or just what. And he does not claim that he was prohibited from calling such witness after his investigation showed any chance of a mix up in smears, etc. No error is presented.

■ Next appellant contends the court should have granted a mistrial as a result of inflammatory and prejudicial argument when the district attorney referred to him as a "beast."

At the guilt stage of the trial the record reflects the following argument was made by the district attorney:

"I know I speak for myself. She testified that this man, and I'm not going to refer to him as a man any more because I don't consider this ex-con a man, I am going to call him a beast because that is what he is.

"MR. HIRSCH: Your Honor, I object to that, that is inflammatory again, he can't do something like that.

"MR. GREEN: I can call him anything I want to, Your Honor.

"MR. HIRSCH: No, he can't, Judge, and I will object to it as being inflammatory and prejudicial.

"THE COURT: I will ask you to refer to the defendant by his name, Mr. Green.

"MR. GREEN: All right. Let's call him Red Devil, or Jim Devil, a beast-like man and when I refer to Jim Devil you will know that I am referring to a beast-like man and I think his name is well spoken, Devil. So we will just call him Devil, a beast-like man where the defense counsel won't get up and hollar any more.

"MR. HIRSCH: We move the Court to instruct him to call him by his name, Your Honor.

"THE COURT: Mr. Green, I am going to warn you one more time, refer to the defendant by his given name.

"MR. GREEN: Judge, the testimony is that his name is Jim Devil.

"THE COURT: I am going to hold you in contempt of court if you do not obey the instructions of the Court.

"MR. GREEN: I think the evidence is that his name is Jim Devil.

"THE COURT: I have instructed you how to refer to him.

"MR. GREEN: Jimmy Lee Grant, I have to call him Jimmy Lee Grant. You see, I am up to here with his rights. I have to call somebody something that I don't like to."

It is observed that the appellant got the only relief he requested, although the district attorney persisted in attempting to circumvent the court's instruction. No request for a jury instruction nor motion for mistrial was made. If the trial judge had granted a motion for mistrial on his own motion, as appellant contends, he might well have presented any re-trial. In United States v. Jorn, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971), it was held that where the court without manifest necessity grants a mistrial sua sponte after jeopardy attaches without a request therefor or without such action being at least concurred in by the accused, the prosecution is barred from trying the accused again if a plea of former jeopardy is interposed even if the prosecution is not at fault as to the cause of the mistrial. While Jorn involved a federal prosecution, the double jeopardy provisions of the Fifth Amendment are applicable to the states through the Fourteenth Amendment, United States Constitution. Benton v. Maryland, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed. 2d 707. And Benton has been accorded full retroactive effect. North Carolina v. Pearce, 395 U.S. 711, 89 S.Ct. 2072, 23 L. Ed.2d 656. See also Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469; Duckett v. State, Tex.Cr.App., 454 S.W.2d 755.

In contending that the argument, even though improper, did not constitute reversible error under the facts and circumstances of the instant case, the State relies upon Hess v. State, 168 Tex.Cr.R. 425, 328 S.W.2d 308, and cases there cited, as well as Forgey v. State, 171 Tex.Cr.R. 355, 350 S.W.2d 32. The State notes that in Forgey, Phillips v. State, 139 Tex.Cr.R. 574, 141 S.W.2d 371, and Jackson v. State, 118 Tex.Cr.R. 443, 42 S.W.2d 433, the reference to the accused in jury argument as a "beast" was not reversible error under the facts of the individual cases. See also Oliva v. State, Tex.Cr.App., 459 S.W.2d 824.

The State's evidence shows that the appellant, who had been living with the mother of the prosecutrix, took the 10 year old prosecutrix in the early morning hours of July 15, 1969, to some vacant apartments, forced her upon an old mattress and attempted to have sexual intercourse with her.

It would thus be difficult to conclude that this improper argument is error of such proportion to require reversal. Neverthe-

less, it is also difficult to understand why a prosecutor would engage in such improper argument. The trial record demonstrates almost preoccupation of the district attorney with establishing the fact that the appellant's nickname at one time had been "Jim Devil." It was finally established by testimony of the appellant on cross-examination, though the appellant and other witnesses related his usual nickname was "Boo-Boo."

Although reversible error is not presented under the facts and circumstances of the instant case, we note that in Hess v. State, supra, this court observed the well established rule which prohibits prosecutorial argument that is abusive or inflammatory. As so wisely stated in Stevison v. State, 48 Tex.Cr.R. 601, 89 S.W. 1072, 1073, "Abuse is not argument, and vituperation is not logic." See also Mikeska v. State, 79 Tex.Cr.R. 109, 182 S.W. 1127, 1132. It takes far less talent to indulge in abuse than in making an intelligent assessment of the facts and the law to aid the jurors in their task.

Appellant also contends the prosecutor alluded to his court appointed counsel in an unprofessional and derisive manner resulting in inflammatory and prejudicial jury argument.

The argument referred to is as follows:

"I don't care, the defense lawyer, I would like to distinguish between the defense lawyer and the other man over here. They are both in suits today. The defense lawyer's job is to try to get your eye off the defendant, that's what he is doing and Mr. Hirsch (defense counsel) is not going to take a ten year old girl out here and do the act that Jimmy Lee Grant did."

To such argument there was no objection nor was any other relief requested. Appellant's counsel later seized upon such statements in his own argument to indicate the unfairness with which the district attorney was conducting himself. Under the circumstances, we perceive no error.

Next appellant complains the district attorney conducted himself in an unprofessional manner demonstrating during jury argument his lack of respect for the trial court and its rulings, depriving him of a fair trial.

Appellant calls attention to the "beast-like" argument set out above and also to that portion of argument where the trial court instructed the district attorney to confine his plea for "law and order" to the county involved and not refer to conditions existing, riots, etc., in other parts of the country. Cf. Joyner v. State, Tex.Cr.App., 436 S.W.2d 141. In each instance the appellant claims the prosecutor simply sought to circumvent the court's instructions and say in different words what he had been instructed not to argue.

It is provided in Rules Governing The State Bar of Texas, Article XIII (Canons of Ethics), Sec. 3(1), Vol. 1A, Vernon's Texas Civil Statutes, p. 233, that "It is the duty of a member to maintain towards the court a respectful attitude. * * *" and Section 5 thereof reads in part:

"It should be the primary duty of a member engaged in public prosecution not to convict, but to see that justice is done. * * *" See also Article 2.01, V.A.C.C.P.

While the prosecutor's conduct leaves much to be desired and the court's forbearance is to be commended, we conclude, in light of the entire record, reversible error is not presented.

Lastly appellant complains of the court's failure to charge on the effect of exculpatory statements introduced by the State.

The State offered into evidence a letter written by the appellant while he was in jail. It is questionable whether the letter was admissible when tendered [1] but appellant's counsel stated, "No objection." The defense strategy involved became clear after the appellant testified and it was argued to the jury that his version of the facts was substantially the same as the letter written a few days after the alleged offense.

There are at least two reasons why the court did not err in failing to charge as contended.

First, the objection to the court's charge was dictated to the court reporter and was not in compliance with Article 36.14, V.A. C.C.P. See Seefurth v. State, Tex.Cr. App., 422 S.W.2d 931; David v. State, Tex.Cr.App., 453 S.W.2d 172; Thayer v. State, Tex.Cr.App., 452 S.W.2d 496; Fennell v. State, Tex.Cr.App., 460 S.W.2d 417.

Second, assuming without deciding the statements were in fact exculpatory, it is not reversible error to fail to charge on exculpatory statements introduced by the State where the accused testifies to substantially the same facts as in the exculpatory statements and the defensive theory (such as alibi in the instant case) is adequately presented to the jury in the court's charge. Rios v. State, 162 Tex.Cr.R. 609, 288 S.W.2d 77; Stewart v. State, 168 Tex.Cr.R. 166, 324 S.W.2d 228, cert. den. 363 U.S. 815, 80 S.Ct. 1253, 4 L.Ed.2d 1155.

Appellant states his remaining grounds of error are without merit. We agree.

Finding no reversible error, the judgment is affirmed.

1. "The admissibility of a letter written in jail while under arrest is governed by the same rules as are applicable to an oral statement made under arrest." 1 Branch's Ann.P.C., 2d ed., Sec. 140, p. 146.