## CHARLES LOUIS FORGEY V. STATE

No. 33,456. June 14, 1961
Motion for Rehearing Overruled October 25, 1961

*Robert H. Stinson*, Dallas, for appellant.

*Henry Wade*, Criminal District Attorney, *James K. Allen*, First Assistant District Attorney, *Frank W. Watts* and *Phil Burleson*, Assistants District Attorney, Dallas, and *Leon Douglas*, State's Attorney, Austin, for the state.

WOODLEY, Presiding Judge.

The offense is rape; the punishment, death.

Appellant pleaded guilty to an indictment alleging rape by force. He offered no evidence other than the testimony of a relative to the effect that he completed the eighth grade in school and was in the Navy for about three years before he moved to Dallas, eight or nine months before the trial.

The prosecutrix, a 23-year-old mother, employed as a private secretary, got in her car which was parked on her employer's private parking lot, about 5:15 P.M., to go home.

The appellant came up to the car, the window of which was down 4 or 5 inches. He said "Would you help me?" and handed the prosecutrix a folded note, the first line of which prosecutrix testified read "If you scream I'll kill you."

Officers searched appellant's automobile after his arrest, some weeks later, and found a notebook upon a page of which were indentations or impressions of writing "that had been written on another piece of paper that had been torn out, and had left the impression of the notes on one of the pages" of the notebook which the officer testified read: "Scream and I'll kill you. I have a gun, do as you're told and no one gets shot." The words "kill" and "shot" were underlined.

As the prosecutrix dropped the note appellant handed her, he opened the door, got in the car and told her he had a gun. She screamed and attempted to get out of the car and appellant grabbed her and turned the volume up on the radio.

Appellant told the prosecutrix that all he wanted was her car and he would let her out up the road. He told her that if she tried to get away again he would kill her.

The prosecutrix did not see a gun, but testified that she could see a bulge in appellant's shirt where he had his hand.

Appellant drove the prosecutrix to a wooded area adjoining a cemetery, took her clothes off, tied her hands behind her, blindfolded her and had sexual intercourse with her without her consent while she was in that condition.

Appellant then dressed the prosecutrix, except for her hose which were left at the scene, draping her blouse over her, her hands being bound. He then drove her back to the parking lot, wiped the interior of the car so as to remove any fingerprints, cut her hands loose and ran away.

The prosecutrix drove to her home, arriving in an hysterical condition; reported the attack to her husband who called the police and took her to the hospital. The prosecutrix identified appellant in a police line up some time later.

Other testimony of the prosecutrix is relevant upon appellant's second ground for reversal wherein he complains that the attorney for the state, in his closing argument, said in substance:

"Can't you realize what fear this little lady will experience if the defendant gets anything less than death, when she realizes he might come out of the penitentiary and cause harm to herself and her minor child."

The court certfies in his qualification to this bill of exception that counsel making argument of such import. stated that it was based on the threat made by appellant to the prosecutrix that if she told anyone of the occurrence he would come back and hurt her.

In this connection, we quote from the testimony of the prosecturix:

"Q. How many times did he stop and say that if he carried you back you would go to the police? . A. Two times is all.

"Q. And what did he say, if anything, that he would do if you did go to the police with what had happened? A. After he drove back to the customer's, Sears parking lot, he said if I did go to the police that he would hurt me no matter what he had to go through to do it.

"Q. I didn't understand you. The camera was clicking; I couldn't hear you. Would you repeat that? A. He said he would get back at me and hurt me no matter what he had to go through to do it."

We see no error in this bill.

Another bill of exception complains that another counsel for the state, in his argument to the jury, referred to appellant as a "beast."

A similar remark was held not to constitute reversible error in Jackson v. State, 118 Tex. Cr. R. 443, 42 S.W. 2d 433, the evidence showing as here an atrocious crime. As here, the extreme penalty was assessed. See also Satterwhite v. State, 113 Tex. Cr. R. 659, 23 S.W. 2d 356, where, as here, the court instructed the jury not to consider the argument and it was held that such instruction rendered the argument harmless and not ground for reversal.

This bill of exception as qualified by the trial court shows no reversible error.

The remaining claim for reversal relates to jury misconduct.

In his motion for new trial appellant alleged, among other grounds, that the jury while deliberating their verdict was guilty of misconduct "3. In discussing the defendant's failure to testify in the face of the court's written admonition in his charge not to refer to his failure to testify."

The amended motion for new trial was not sworn to and there were no affidavits to support the above quoted allegation.

The trial court heard the testimony of Jurors Sietz and Yenny, who were called by appellant. Appellant complains that at the close of the hearing the trial judge should have permitted him to have subpoenas issued for the other 10 jurors so that the court could examine fully the question of the jury having discussed the failure of the defendant to testify presented by the testimony of the Juror Sietz.

The testimony of the Juror Sietz does not show jury misconduct, and appellant does not so contend. At most, it shows the question was brought up why appellant did not testify and attention was called to the court's charge and there was no further discussion of the matter.

We are unable to agree with appellant's contention that the trial court was in error in not permitting the other 10 jurors to be subpoenaed. It is well settled that the defendant is not entitled to a "fishing expedition" into supposed jury misconduct. Prince v. State, 158 Tex. Cr. R. 320, 254 S.W. 2d 1006.

We need not here determine whether or not testimony of a juror at the hearing is available to the defendant to supply a defect in his pleading of jury misconduct.

The evidence is sufficient to sustain the jury's verdict and appellant appears to have received a fair and impartial trial on his plea of guilty.

The judgment is affirmed.