**Eddie James WARD, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 44142.**

Court of Criminal Appeals of Texas.

Nov. 23, 1971.

Rehearing Denied Jan. 18, 1972.

---

Sam Houston Clinton, Jr., Larry Bales, Austin, for appellant.

Robert O. Smith, Dist. Atty., Herman Gotcher, Lawrence Wells, and Dain Whitworth, Asst. Dist. Attys., Austin, and Jim D. Vollers, State's Atty., Austin, for the State.

OPINION

ODOM, Judge.

This appeal is from a conviction for the offense of robbery by firearms. The state did not seek the death penalty. Punishment was assessed by the jury at 101 years.

We affirm.

The record reflects that, shortly before 9:00 A.M. on July 9, 1969, two men en-

tered the Texas Warrant Company in Austin, produced pistols, and announced a "holdup". The two gunmen herded those present into a restroom in the rear of the office and proceeded to take some $4,000 in currency from the cash drawers, assisted involuntarily by a customer who entered the premises while the robbery was in progress. Eight persons testified that they saw the two during the ten to fifteen minutes they were on the premises.

Lieutenant Merle Wells, of the Austin Police Department, investigated the robbery. Based upon the general description of the men given to him, eight mug shots were obtained at around 9:30 A.M., and shown to the witnesses. Photographic identification of appellant was made by some of the witnesses and a "pick up" was put out over the police radio. Shortly thereafter, appellant was arrested in a barber shop by Officers Barrett and Chew.

At the police station, a glasses case was taken from the person of appellant. The case contained sunglasses which were similar to those identified by witnesses as having been worn by one of the men at the time of the robbery. Also found on appellant's person was a receipt in appellant's name for a $12.48 purchase made at Texas State Optical.

At approximately 2:00 P.M., a lineup was held. Appellant was again identified by at least three of the witnesses. After the completion of the lineup, the witnesses were shown the sunglasses. One witness, Bruce Haile, thought that these were the same glasses worn by appellant.

At his trial, appellant interposed the defense of alibi. He called several witnesses to give an account of his whereabouts on the morning in question and an employee of Texas State Optical who testified that the company's records indicated that the sunglasses in question were purchased between the hours of 9:00 A.M. and 12:00 noon on July 9, 1969.

Prior to trial, appellant moved to suppress any mention of the pre-trial identifications and to suppress any in-court identification on the ground that such pre-trial procedure violated his right to due process of law. Also, he requested that he be permitted to sit in the audience until such time as the state's witnesses were able to identify him in court or, in the alternative, that persons physically similar to him be allowed to sit with him at the defense table until the in-court identifications were made. On March 9, 1970, a pre-trial hearing was held. Such motions were overruled, the court stating:

"And the ruling of the Court is that the line-up is not admissible in court; however, the In-Court identification will be admissible, because it has not been tainted, either by the mug shots or the line-up, for the following reasons: That the witnesses, all of the witnesses, had prior opportunity to observe the criminal act from three to five minutes, and there is no discrepancy between the line-up description and the actual appearance of the accused; and there was no identification of any other person, other than the defendant in this case, prior to the line-up, and at all times the witnesses identified the defendant and no other person, and the lapse of time between the time of the occurrence and the time the pictures were shown to the witnesses was forty minutes. And between the time of the occurrence and the line-up was less than five hours, and it is the opinion of the Court that the In-Court identification which the Court held at the Pre-Trial Hearing, or the separate hearing out of the presence of the jury, was of independent origin, to which the defendant excepted."

The court also overruled appellant's motion relating to the procedure to be followed during the in-court identifications.

By his first four grounds of error, appellant contends that the trial court erred in overruling these pre-trial motions and reasserts his contention that the pre-trial identifications were so conducive to mis-

taken recognition as to taint the later in-court identification.

■ Appellant first contends that the trial court erred in overruling his motion relating to the in-court identification procedures. Faced with an almost identical problem in Moore v. State, 424 S.W.2d 443, this court stated:

> "We know of no law which prohibits a court from requiring that a defendant sit at the counsel table with his attorney during the trial. Nor do we know of any law which prohibits state's counsel from pointing to a defendant in the courtroom and referring to his physical appearance in the presence of witnesses."

We adhere to this court's decision in Moore v. State, supra. See also Sertuche v. State, Tex.Cr.App., 453 S.W.2d 841. The first ground of error is overruled.

■ By his second ground of error, appellant claims that the trial court erred in failing to determine whether the mug shot display was unduly suggestive and presented a likelihood of misidentification. The trial court determined that in-court identification would be admissible "because it has not been tainted, either by the mug shots or the lineup * * *." The second ground of error is overruled.

Appellant's third and fourth grounds of error relate to his contention that pre-trial identification procedures utilized tainted the in-court identifications.[1]

■ Photographic identification of an accused prior to trial does not automatically taint an in-court identification. The Supreme Court, in the case of Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247, stated that:

> " * * * convictions based on eyewitness identification at trial following a

pretrial identification by photograph will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification."

In order to violate the *Simmons* test, the photographic identification procedure utilized must in some way be so defective as to indicate or suggest the photograph which the witness is to identify. Green v. State, Tex.Cr.App., 467 S.W.2d 481; Powell v. State, Tex.Cr.App., 466 S.W.2d 776; Johnson v. State, Tex.Cr.App., 466 S.W.2d 735; Smith v. State, Tex.Cr.App., 459 S.W.2d 642; Sertuche v. State, Tex.Cr.App., 453 S.W.2d 841. Thus, the *Simmons* test has been held to have been violated in cases where the defendant's photograph was the only non-mug shot in the grouping and was 2½ times larger than the other photographs in the array. United States v. Sutherland, 5 Cir., 428 F.2d 1152; United States v. King, D.C., 321 F.Supp. 614. Similarly, the police cannot indicate to a witness prior to a photographic identification which photograph they think should be identified or show the witness only one photograph of a suspect who generally resembles the description of the law-breaker given by the witness. Simmons v. United States, supra; Green v. State, supra; Johnson v. State, supra; Johnson v. State, Tex.Cr.App., 462 S.W.2d 955.

■ The record in the instant case reflects that eight black and white mug shots of like size composed the photographic array used. The photographic identification by the witnesses took place only forty minutes after the robbery had occurred. The mug shots were of persons who fit the general description of the robber which had

---

[1]. Ground of error number three complains of the failure of the trial court to exclude the in-court identifications at the close of the pre-trial hearing. Ground of error number four is the same complaint with regard to the denial of appellant's motion to the same effect made by him after the state had rested.

been given by the witnesses.[2] The photo array was shown to the witnesses individually. The record is devoid of any evidence that the police officer who conducted the investigation in any way indicated who he thought the robber might be.

Appellant's complaint with regard to the photographic identification is that he was the only person portrayed in the mug shot array wearing an Afro hair style. He believes that, since hair style was one feature noted by the witnesses in their general description, there is a substantial likelihood that his photograph was selected from the array on this basis. He contends that subsequent identifications were based solely on the witnesses' recollection of his photograph.

We do not agree. The robbery took place during the daylight hours in a well-lit office, and each of the five persons who were able to identify appellant had ample opportunity to observe him. Each witness reached his decision with respect to identification without consultation with his fellow witnesses. Appellant fits the original description given by each witness immediately following the robbery. The short time lapse between the robbery and the photographic presentation would militate against an identification based solely on one phys-

ical feature in the instant case.[3] The witnesses had never failed to identify appellant; nor had they identified someone other than appellant. Taken together, these circumstances leave little doubt that the in-court identification of appellant was based solely on their observations at the time of the robbery. Martinez v. State, Tex.Cr.App., 437 S.W.2d 842.

■ While it might be better practice to use photographs which portray persons whose every feature matches the pre-identification description, we do not feel that either due process of law[4] or common sense[5] requires such procedure. Accordingly, we hold that the photographic identification procedure used in the instant case was not so impermissibly suggestive as to deny appellant due process of law. Simmons v. United States, supra; Glover v. State, supra; Thurman v. State, 262 N.E. 2d 635 (Ind.1970).

■ With regard to the line-up, there is some confusion in the record as to whether appellant participated therein without the benefit of advice of counsel. However, the trial court resolved such issue in appellant's favor by holding inadmissible any evidence relating to the line-up identification. We find that the requirements of

2. There were eight eye witness descriptions. While there is some discrepancy as to the attire worn by the robber, there is agreement between the witnesses who describe him that the robber was a man, approximately 5′ 11″ tall, with an Afro hairstyle and wearing sunglasses. One witness approximated the robber's weight as being about 160–170 pounds.

3. It should be noted that the facts in the instant case closely parallel those found in Simmons v. United States, supra. In Simmons, the robbery had taken place in the afternoon in a well lighted bank. In Simmons, as in the instant case, the robbers wore no masks; and five bank employees had been able to observe the robber for periods ranging up to five minutes. The only real distinction between Simmons and the instant case is that the photographic identification in Simmons took place a day after the rob-

bery. The identification procedures which were upheld in Simmons are substantially the same as those followed in the instant case.

4. In Glover v. State, 470 S.W.2d 688 (Tex.Cr.App.1971), we held that the defendant had not been denied due process where he was the blondest and tallest man in the lineup. A similar result was reached in Thurman v. State, 262 N.E.2d 635 (Ind.1970), where the court held that defendant's rights had not been violated by a lineup in which he was the only individual with an Afro haircut. In Thurman, all three witnesses had stated that the offender had worn his hair in that style.

5. Hair styles, like clothing styles, change rather rapidly. We see no reason for placing an impossible burden on the police by requiring them to use only photographs of persons with like hair styles.

United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, have been met.

Appellant contends that the photographic identification, when coupled with a line-up which violates the requirements of *Wade*, tainted the in-court identifications. He alleges that the in-court identifications of appellant by five of the eye witnesses [6] were based on pre-trial identification of him and were not of independent origin.

■ A mere showing of pictures prior to the line-up does not necessarily taint an in-court identification. Evans v. State, Tex.Cr.App., 444 S.W.2d 641. Nor does the fact that the witnesses were shown appellant's sunglasses and shoes after having identified him in the line-up cause such a result. Johnson v. State, Tex.Cr.App., 466 S.W.2d 735. Viewing the totality of the circumstances surrounding the pre-trial identifications, we find nothing in the record which demonstrates that such procedure failed to meet the requirements announced in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199. The evidence was sufficient to support the trial court's finding that the in-court identifications were of independent origin.[7]

By his sixth ground of error, appellant complains that the trial court erred in admitting into evidence State's Exhibit 17, a teletype of a "pickup" relating to the robbery.

■ The record reflects that appellant's counsel thoroughly cross-examined Officer Barrett, of the Austin Police Department, with regard to the "pickup" prior to its introduction into evidence. Error, if any, in admitting this exhibit is harmless. Clark v. State, Tex.Cr.App., 449 S.W.2d 231; Vasquez v. State, Tex.Cr.App., 415 S.W.2d 188.

Appellant, by his seventh ground of error, contends that the trial court erred in overruling his objections to the state's "prejudicial badgering" of one of the alibi witnesses. He complains that the state was allowed to cross-examine Gertie Ward on totally irrelevant matters. The questions relate to the witness' refusal to talk to officers who were executing a search warrant at her and appellant's mother's home.

■ Much latitude is allowed in cross-examination when its purpose is to bring out facts which will inform the jury as to the attitude, motive, and interest which may be affecting the testimony of the witness. Blake v. State, Tex.Cr.App., 365 S.W.2d 795; Hughes v. State, 163 Tex.Cr.R. 575, 294 S.W.2d 846. While neither party can, under the guise of cross-examination, go into matters which are so highly inflammatory as to prejudice the jury,[8] such did not occur in the instant case. The record reflects that the state's inquiry into this area was directed toward showing the witness' bias in favor of her brother. We perceive no error.

■ By his eighth and ninth grounds of error, appellant complains of the trial court's rulings concerning a pair of his shoes which were admitted into evidence over objection.

No harm or prejudice resulting from the questions concerning these shoes and their admission into evidence was shown since positive identification was made by several witnesses. No error is shown. Corpus v. State, Tex.Cr.App., 463 S.W.2d 4.

■ By his sixteenth ground of error, appellant challenges the sufficiency of the evidence to support his conviction. He urges this court to find that, in light of the

---

6. It appears that only five of the eight persons who were present were able to identify the appellant at his trial.

7. In addition to those factors already mentioned, three of the five witnesses who later identified appellant at trial testified at the pre-trial hearing that their identification was based solely on observations made at the time of the robbery.

8. See Brown v. State, 168 Tex.Cr.R. 67, 323 S.W.2d 954.

testimony given by alibi witnesses, he could not have committed the crime. The evidence was sufficient for the jury to find appellant guilty on the basis of positive in-court identifications made by five witnesses. Rodriguez v. State, 164 Tex.Cr.R. 641, 301 S.W.2d 921.

By his fifth ground of error, appellant contends that the trial court erred in denying his motion for mistrial based on what he considers to be prejudicially suggestive argument by the state.

This contention is based on the following argument:

"You know, a man that has got an alibi like that is not going to be stupid enough to let a policeman walk in and in his hand find a gun and $4,000.00 in a bag. Don't you know how many times you find a gun in a robbery—bottom of the river somewhere—or a moneybag or any of it.

"But Eddie Ward made a mistake this time. He went in there and robbed a place that was just full of people—three people that couldn't positively identify him—three people that couldn't—but, Mrs. Goerner and Gentlemen * * *

"MR. CLINTON: Your Honor, we object to Counsel's statement that he made a mistake this time and move for a mistrial; it suggests something to the jury completely outside the record, and is so prejudicial it cannot be removed from their minds.

"THE COURT: Lady and Gentlemen of the Jury, you are to take the evidence from the witness stand and that place alone, and you are to disregard the statement of the District Attorney. The motion for mistrial will be denied.

"MR. CLINTON: Note our exception.

"MR. GOTCHER: I certainly withdraw any presumption that Mr. Clinton implies; I certainly didn't mean to say

that. In Mr. Bales' argument he said that you cannot convict by an eyewitness identification. That seems to be the other question—you can't do this—if you can dig up somebody that just suddenly bought some glasses, if he did, he wouldn't even have to prove that; it just says that a person went in there, or a man was there, and even the defense witness testified that she sat out there and waited for Eddie James Ward outside of T.S.O. for ten or fifteen minutes."

The purpose of argument is to assist the jury in properly analyzing the evidence. The prosecutor cannot use closing argument to get evidence before the jury which is outside the record and prejudicial to the accused. Lookabaugh v. State, 171 Tex.Cr.R. 613, 352 S.W.2d 279; Clark v. State, supra. However, in light of the court's ruling and instruction to the jury, as well as the prosecutor's clarifying remark, we perceive no reversible error. Forgey v. State, 171 Tex.Cr.R. 355, 350 S.W.2d 32; Gauntt v. State, 169 Tex.Cr.R. 520, 335 S.W.2d 616.

By his tenth ground of error complaint is made that the trial court's charge on punishment failed to provide any criteria, test, or guidance as to factors to be considered by the jury in assessing appellant's punishment. His claim here is that such charge deprived him of due process of law.

A similar contention with regard to the court's charge in a death penalty case has been found to be without merit by the United States Supreme Court in McGautha v. California, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711. Ground of error ten is overruled.

By his twelfth ground of error, appellant insists that the trial court erred in allowing the state to urge the jury to make an example of appellant, over timely objection to such argument.

The argument which is the basis of this contention is:

" * * * 'Look at it realistically,' and that's exactly the word I want to use—realistically—by practical purposes, what your verdict is going to mean. It is better than any shotgun squad; it is better than any type of communication you can use at all, because you have it—to come back with a 200 year verdict—it definitely is not out of reason in the mind of somebody who already at this particular moment is contemplating robbing a store. It means something. 'You know, I could get 200 years maybe if I got caught.' It means something; it is paramount; it is important; it is the whole basis of law enforcement. I beg you to go back in there and deliberate and come back with a verdict of * * *

"MR. CLINTON: Your Honor, we are going to object to his line of argument as not a plea for law enforcement, but rather urging upon this jury to make an example out of this defendant, and we think that's improper.

"THE COURT: I will overrule the objection.

"MR. CLINTON: Note our exception.

"MR. GOTCHER: He said, 'Tip the scales of justice'—do that—Lady and Gentlemen, do that. For once in our whole lives, tip the scales of justice one time in favor of law and order, and give your vote for keeping robbers out of stores and letting people earn their own living. We ask you to return a verdict of 200 years; and I thank you."

While we do not condone such plea for 200 years,[9] the argument does not constitute reversible error. Bowman v. State, Tex. Cr.App., 446 S.W.2d 320; Villarreal v. State, Tex.Cr.App., 440 S.W.2d 74; Parks v. State, Tex.Cr.App., 400 S.W.2d 769; Lummus v. State, Tex.Cr.App., 376 S.W.2d

346. See also Hendrix v. State, Tex.Cr. App., 474 S.W.2d 230 (1971).

By his fourteenth ground of error, appellant contends error in overruling objections to answering a question submitted by the jury during the course of its deliberations on punishment.

After a period of deliberation, the jury submitted the following question: "What is the minimum number of years a person must serve of a sentence before he is eligible for parole?"

The court responded with supplementary instructions which stated:

"During your deliberations you are not to consider or discuss the possible actions of the Board of Pardons and Paroles or how long the defendant will be required to serve the punishment you assess."

We were confronted with this contention recently in Fitzsimmons v. State, 471 S.W. 2d 858 (1971) and overruled the same, saying:

"It is within the trial court's discretion to instruct the jury that they should not discuss how long the accused would be required to serve in order to satisfy the sentence. Hernandez v. State, 169 Tex. Cr.R. 418, 334 S.W.2d 299."

Ground of error fourteen is overruled.

Appellant also contends that the trial court erred in denying his motion for mistrial on the basis that the aforementioned question submitted by the jury to the court reflected jury misconduct. This contention was decided adversely to appellant in Garcia v. State, Tex.Cr.App., 453 S.W.2d 822. We adhere to our ruling in that case.

Finally, he argues that the trial court erred in refusing to compel the state to produce for his inspection certain offense reports. These relate to named per-

9. See Sills v. State, Tex.Cr.App., 472 S.W.2d 119 (1971); Miller v. State, Tex.Cr.App., 465 S.W.2d 150.

o sons who were shown to have been near the automobile in which the robbers fled. We have examined these and agree with the trial court that nothing therein would have been of assistance to appellant in preparing his defense. See Campos v. State, Tex.Cr.App., 468 S.W.2d 81.

Finding no reversible error, the judgment is affirmed.