**William C. CURTIS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 49520.**

Court of Criminal Appeals of Texas.

March 12, 1975.

Laird Palmer, Austin, for appellant.

Robert O. Smith, Dist. Atty. and David A. Sheppard, Asst. Dist. Atty., Austin, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

MORRISON, Judge.

The offense is possession of marihuana; the punishment, four years.

Initially, appellant claims the evidence is insufficient to support his conviction.

The record reflects that upon entering appellant's Austin apartment, pursuant to a search warrant, officers heard loud music and smelled marihuana. Upon entering the living room, they saw appellant and four others seated in a circle on the living room floor. A manila envelope containing marihuana, as well as an ashtray containing a marihuana cigarette butt, was found near the center of the circle. They discovered a sixth person, Millerdean Brooks, asleep in a bedroom. The officers found a small baggie of marihuana and some cigarette papers in a sport jacket in the closet of that bedroom. Officers also recovered some envelopes addressed to appellant at a Fort Worth address in that bedroom, as well as envelopes addressed to Brooks. In the kitchen the officers retrieved two marihuana butts and four small tinfoil wrappers containing traces of heroin from a trash can. On a counter in the kitchen, they located a small manila envelope, which was not introduced into evidence, containing marihuana particles.

One of the officers testified that the apartment had been under surveillance for approximately two days before the execution of the warrant. He and another officer testified that they observed between five and ten people enter and leave the premises within three hours prior to the execution of the warrant. Further testimony indicated appellant arrived at the apartment a half hour to an hour before the officers executed the warrant.

Another officer testified that the apartment was sparsely furnished and that the bedroom in which Brooks was found was the only one which contained furniture, except for "a few pieces—a couple of lamps . . . some stereo equipment . . ." in other parts of the apartment.

The manager of the apartment where the arrest occurred testified that appellant, who represented Brooks as his wife, rented the apartment under the assumed name of William Johnson.

Department of Public Safety Chemist John McCutcheon testified that he analyzed the suspected contraband recovered from appellant's apartment and determined that it totaled $9/10$ of a gram of marihuana. He also stated that the tinfoils contained traces of heroin and 0.3 grams of quinine.

An accused may with another or others jointly possess dangerous drugs or narcotics. Simpson v. State, Tex.Cr.App., 486 S.W.2d 807; Evans v. State, Tex.Cr. App., 456 S.W.2d 911; King v. State, 169 Tex.Cr.R. 34, 335 S.W.2d 378. Mere presence, however, at a place where narcotics or dangerous drugs are being used or possessed by others does not in itself justify a finding of joint possession. Hicks v. State, Tex.Cr.App., 489 S.W.2d 912; Adair v. State, Tex.Cr.App., 482 S.W.2d 247; Culmore v. State, Tex.Cr.App., 447 S.W.2d 915.

The State must show that (a) the appellant exercised, either singularly or jointly, care, custody, control and management over the contraband and (b) that he knew the object he possessed was contraband. The evidence must affirmatively link the accused to the contraband in such a manner that a reasonable inference arises that the accused knew of its existence and whereabouts. Hineline v. State, Tex.Cr.App., 502 S.W.2d 705; Powell v.

State, Tex.Cr.App., 502 S.W.2d 705; Williams v. State, Tex.Cr.App., 498 S.W.2d 340. This affirmative link is established by showing facts and circumstances which indicate the accused's knowledge and control of the contraband. Williams v. State, supra; Powell v. State, supra; Alba v. State, Tex.Cr.App., 492 S.W.2d 555.

The evidence in the case at bar is sufficient to link appellant with the contraband found in the bedroom closet where Brooks was sleeping. Appellant, representing Brooks as his wife, rented the apartment. The manager testified that he lived there and that she was present when he moved in. Letters addressed to both the appellant and Brooks by name were found in that bedroom. The contraband was found in a sport jacket in a closet of that room. One of the officers testified that this bedroom was the only room which contained any significant furniture.

In oral argument before this Court, appellant's counsel placed great reliance upon Hernandez v. State, 517 S.W.2d 782 (Tex.Cr.App. 1975). In that case the defendant's cousin testified that the night in question was the first that defendant had ever spent in the apartment and that the paraphernalia belonged to her and another person and that she had pleaded guilty to the charges arising out of the incident. There was additional testimony concerning needle marks, but the testimony did not reflect whether any fresh tracks were found on the defendant. This Court reversed the conviction for possession of narcotic paraphernalia and concluded that the evidence did not reflect an affirmative link between the paraphernalia and the defendant, and that the defendant's mere proximity to the prohibited paraphernalia was insufficient to prove the fact that he possessed it. In the case at bar, however, the record affirmatively reflects the defendant's control and management of the apartment.

Appellant's second ground of error challenges the sufficiency of the search warrant affidavit, as well as the introduction of the marihuana, the tinfoil, and one of the envelopes addressed to Brooks. An examination of the affidavit fails to support appellant's contention that the affidavit does not meet the requirements of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723. Under *Aguilar,* an affidavit for a search warrant based on hearsay information must set forth two elements. First, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and, secondly, that he be informed of some of the underlying circumstances from which the affiant concluded that the informant was credible and his information reliable.

The pertinent portion of the affidavit recites:

" . . . affiant has received information from a reliable and credible source that William C. Curtis C/M 1/28/44 and other person or persons unknown to source by name, age or description, are keeping for the purpose of sale, a narcotic drug, to-wit: heroin, at the above described residence. My source has told me that he has been present during the past 48 hours and has seen William C. Curtis C/M selling heroin by the hit and one half gram. I believe my source of information to be true and correct because my source has given information in the past which has proven to be true and correct in every instance; further to the best of my knowledge my source does not have a criminal record; further I have observed within the past 48 hours several known narcotic addicts going to, staying a short while, and then leaving, the above described premises."

The recitations in the affidavit in the case at bar state, first, that the informant had actually been inside the apartment in question and seen the appellant selling heroin, and, second, that the informant had provided true and correct information on other occasions. The affidavit is sufficient. Powell v. State, Tex.Cr.App., 505 S.W.2d 585.

Appellant's third ground of error relates to three instances in which he claims the court denied him discovery. Appellant charges the court's action denied him an opportunity to interview the witnesses and prepare his defense. The ground is clearly multifarious. Article 40.09, Sec. 9, Vernon's Ann., supra. We shall, however, briefly discuss appellant's contentions.

The record reflects that the court granted appellant's pre-trial motion for discovery, requiring the State to produce a list of all the witnesses they intended to call to the stand during their case in chief. During the presentation of motions immediately prior to trial, the court required the State, upon appellant's request, to verify that the list was complete. The State responded that it intended to call one additional witness, a woman, whose name they did not know. Appellant objected. The following colloquy then ensued.

"MR. PALMER [appellant's attorney]: Judge, I'm entitled to know the names of the witnesses before we go to trial. I can't get the pre-trial discovery which I'm entitled to without knowing their names . . .

THE COURT: I'll do this. If they don't give you the name of the witness before they put on the witness other than listed here on their direct testimony, I'll give you an opportunity to talk to her before she's put on the stand.

\* \* \* \* \* \*

MR. PALMER: All right. In other words, it's the order of the Court that the District Attorney will inform me of the name of the witness prior to calling her, and that whatever time that is, we'll have a recess sufficient for me to get my discovery?

THE COURT: Yes.

MR. PALMER: All right, that's fair."

■ The record reflects that appellant, in response to the court's ruling, examined the witness in question, Betty Pabich, the apartment manager, before she testified.

Appellant acquiesced to the procedure followed, which, under the circumstances, provided him an adequate opportunity to interview the witness, and he may not now claim a denial of discovery.

■ Appellant next contends he was denied discovery when the State called Department of Public Safety Chemist John McCutcheon instead of Department of Public Safety Chemist C. H. Beardsley, named by the State in response to appellant's motion for discovery to list witnesses. The trial court denied appellant's motion to suppress McCutcheon's testimony, stating that both McCutcheon and Beardsley were Department of Public Safety Chemists and had conducted the experiments on the suspected contraband jointly. The court further ruled that appellant could summon Beardsley to a hearing after trial to determine if he would testify differently, and, if so, would grant appellant a new trial. No error is shown.

■ Appellant also charges in the same ground of error that the court violated his order for discovery by failing to require the State to list the reputation witnesses they intended to present at the punishment hearing.

Initially, we note that Article 39.14, V.A.C.C.P., the discovery statute, does not provide for the production of such witnesses' names. Article 20.20, V.A.C.C.P., requires listing only of witnesses who have appeared before the grand jury. See Hoagland v. State, Tex.Cr.App., 494 S.W. 2d 186.

Although the record reflects the trial court granted appellant's motion for discovery requiring the State to list both the witnesses they intended to call during the guilt-innocence and the punishment stages of the trial, the record also reflects that as trial began the court ruled that appellant was entitled to the list of witnesses the State intended to call during their case-in-chief only. At the commencement of the punishment hearing, the court did, however, grant appellant 30 minutes to inter-

view the 18 witnesses which the State acknowledged they intended to call.

Appellant also challenges the propriety of permitting reputation testimony at the punishment hearing. His contention is without merit. See Article 37.07, V.A.C.C.P.

Appellant next contends the court erred in failing to permit him to examine each of the State's reputation witnesses outside the presence of the jury to determine if they were qualified to testify about appellant's character. Prior to the testimony of the first reputation witness, the court stated:

". . . I will direct the District Attorney to give you a list of witnesses, and I'll take a recess until 10:30. And I will direct the witnesses to talk to you about anything that you want to talk to them about. I'll give you 30 minutes to talk to them.

\*   \*   \*   \*   \*   \*

. . . If you want to take them on voir dire in front of the jury, I'll let you go into their qualifications at that time."

Although the proper procedure would have been to permit him to examine the witnesses outside the presence of the jury, as outlined in Crawford v. State, Tex.Cr.App., 480 S.W.2d 724, appellant has not shown by formal bill of exception or at the hearing on motion for new trial that any of these witnesses were not qualified to testify. Appellant did call five of the State's reputation witnesses at the hearing on the motion for new trial. An examination of that testimony indicates they all were qualified to testify. No error is shown.

Appellant's fifth ground of error claims the prosecutor committed reversible error by referring to the appellant as a "dope dealer". Appellant's objection to the remark was immediately sustained, and the court instructed the jury not to consider the argument. Normally, an instruction to disregard will, as it is in the

case at bar, be sufficient to remove the error, if any, in argument. Overton v. State, Tex.Cr.App., 490 S.W.2d 556. Cf. Royal v. State, Tex.Cr.App., 448 S.W.2d 470. See also Forgey v. State, 171 Tex.Cr.R. 355, 350 S.W.2d 32, in which this Court held that the action of the court in instructing the jury not to consider the argument rendered the argument harmless and not ground for reversal.

Appellant next contends that the following remark by one of the police officers in response to the prosecutor's question represents an unresponsive answer:

"Q [Prosecutor]: All right, a person who uses heroin, how does he normally use it?

A [Officer]: There's two ways in which the heroin is generally administered. People administer it into their veins with a hypodermic syringe or man-made hypodermic syringe or, as Mr. Popsy—as Popsy [the appellant] does, you can snort it through your nose."

The court immediately retired the jury to the jury room. Upon their return, he stated:

"You are instructed at this time to disregard the last answer of the witness for any purpose whatsoever."

While the statement was not necessarily unresponsive in view of the question, we do hold that the prompt and firm action of the trial court cured what error there may have been. Noble v. State, Tex.Cr.App., 402 S.W.2d 758; Jackson v. State, Tex.Cr.App., 439 S.W.2d 843; Pearson v. State, Tex.Cr.App., 500 S.W.2d 829.

Ground of error seven complains without citation of authority that the court erred in granting the State's motion for an overnight recess. This occurred after the finding of guilt and prior to the hearing on punishment and was occasioned by the State's request for time to secure some out of town witnesses.

We are aware of no holding that such act constituted an abuse of the trial court's

discretion and overrule appellant's contention. Johnson v. State, Tex.Cr.App., 469 S.W.2d 581, and cases there cited.

Ground of error eight alleges that the trial court erred in not permitting appellant to ask his reputation witness a certain question. The record reflects that the question was actually asked and answered, and that the answer was not withdrawn from the jury's consideration. Nothing is presented for review.

 Appellant's last ground of error contends that the court erred in permitting Chemist and Toxicologist McCutcheon to testify that quinine, a small amount of which was found on appellant's premises, could be mixed with heroin. The chemist testified that on other occasions he had examined heroin specimens and found them to contain quinine. Surely, he was qualified to recite his professional experience, and no error is shown.

Finding no reversible error, the judgment is affirmed.