MEMORANDUM OPINION



No. 04-06-00258-CR



Eric RYLES,


Appellant



v.



The STATE of Texas,


Appellee



From the 379th Judicial District Court, Bexar County, Texas


Trial Court No. 2004CR4258


Honorable Bert C. Richardson, Judge Presiding



Opinion by: Karen Angelini, Justice


Sitting: Catherine Stone, Justice

 Karen Angelini, Justice

 Steven C. Hilbig, Justice


Delivered and Filed: August 1, 2007


AFFIRMED

 Eric Ryles was found guilty of aggravated robbery with a deadly weapon and was sentenced
to twenty years confinement in the Texas Department of Criminal Justice Institutional Division. He
brings the following two issues on appeal: (1) the trial court erred in denying his motion to suppress
an impermissibly suggestive identification; and (2) the trial court erred in overruling his objection
to the State's improper jury argument. We affirm.

Background


 On March 5, 2004 at around 10:00 a.m., Erica Guzman was working the morning shift at the
Radha Food Mart when a black male, whom she recognized as a customer because he had been in
the store two or three times before, entered the store acting suspiciously. Guzman noticed that,
despite it not being cold outside, the man was wearing a big jacket and a red fisherman's hat. She
watched as the man went to the back of the store and got a bottled drink. After the other customers
left, the man approached the counter to pay. He put the drink on the counter and gave Guzman
change to pay for it, but when she began counting the change, he lifted his shirt to reveal a black gun
tucked into the waistband of his pants. He then told Guzman that he did not want to hurt her and
ordered her to give him all the money in the cash register. According to Guzman, she then asked if
he wanted a bag. At first, the man indicated that he did, but then after looking around told her no and
took the money (which totaled approximately $200). As he was leaving, the man ordered Guzman
to keep her head down, sit on the floor, and not pick up the phone to call the police. According to
Guzman, the man warned her that if he saw her pick up the phone, he would come back into the store
and kill her. 

 The man then went out into the parking lot and sat in a green truck for approximately ten
minutes, during which time another customer, an elderly lady, came into the store. After seeing
Guzman, the lady asked her what had happened. Guzman told the lady that she had been robbed. The
lady attempted to look out the window to get the license plate number, but Guzman warned her not
to look out the window because the man might come back and kill them both. After the man drove
away in his truck, Guzman called the police. According to Guzman, while waiting for the man to
leave the parking lot, she was so scared that she was trembling and vomiting. 

 When the police arrived, Guzman described the suspect as a black male, approximately
twenty-four years of age, 5' 8", 160 pounds, short hair, with a goatee, wearing a white T-shirt, blue
jean pants, a big jacket, and a red fisherman's hat. She also told the police that she could identify him
anywhere because of the scar on his mouth, which looked to her like he had been shot in the mouth.
According to Guzman, she noticed that when the suspect would talk, "his mouth was to the side."
Guzman also told the police that the whites of the suspect's eyes were yellow.

 On March 5, 2004, at around 9:50 a.m., San Antonio Police Officer Richard Bianchi was
dispatched to a robbery at the Radha Food Mart. Officer Bianchi took the description given by
Guzman and put it out over the radio, but no suspect was apprehended. According to Officer
Bianchi, after being made aware that a video camera in the store recorded the robbery, he recovered
the videotape and secured it as evidence. 

 San Antonio Police Detective Steve Almanza investigated the Radha Food Mart robbery. On
March 16, 2004, eleven days after the robbery, he received a lead on a possible suspect from a
patrolman. Detective Almanza placed the photo of the possible suspect in an array of six pictures
and presented the array to the witness, Erica Guzman. Although this first array contained a picture
of a suspect with a distinctive scar on his lip, Guzman did not identify any of the photos as depicting
the man who had robbed the store. 

 On the night of March 20, 2004, San Antonio Police Officer Edward Miller was on patrol
duty when he was dispatched to an apartment complex to investigate a report of a loud party. As he
was leaving the apartment complex, he saw Eric Ryles in a group of people around the apartment
entrance and noticed that Ryles matched the description of the suspect in the Radha Food Mart
robbery. (1) Officer Miller approached Ryles, told him that he matched the description of a robbery
suspect, and asked him to go to the substation to be photographed. Ryles agreed and was taken to
a police substation where detectives took photographs of him. Officer Miller then drove Ryles back
to the apartment complex.

 Officer Miller alerted Detective Almanza to the photograph of Eric Ryles, which Detective
Almanza then used in creating a second array to show Guzman. Detective Almanza testified that
when creating an array, police officers will try to find pictures of individuals who have the same type
and length of hair, facial features, and complexion; however, according to Detective Almanza, in this
case, because the suspect had a scar on his lip, he could not find pictures of other individuals with
the same exact injury. Therefore, he decided to use photos of individuals with facial scars, bruises,
or something unusual about their faces. On March 21, 2004, he showed the second array to Erica
Guzman. She identified the photograph of Eric Ryles, photograph number five, as the man who
robbed her. She then signed and dated the photograph. 

 Detective Almanza testified that when he showed Guzman each array, he told her that he had
six pictures to show her, that the suspect may or may not be included, and that she should tell him
if she recognized anyone, but that if she did not recognize anyone, she should not guess. 

 At trial, Guzman again identified Eric Ryles as the man who robbed the Radha Food Mart.
Guzman recognized Ryles because of the same mark on his lip and his mouth being to the side. She
also testified that Ryles's face was one she would never forget: "That a face I can never forget . . . .
I have nightmares to this day because of that." 

Photographic Array


 In his first issue, Ryles argues that the photographic array used was impermissibly suggestive
because the five individuals included with him did not have similar features. Thus, he argues that
the trial court erred in denying his motion to suppress. Ryles also contends that the procedure of
displaying a six-picture array likely induced the complainant, Guzman, to make an incorrect
identification at the time she was shown the array, as well as a misidentification later in court.

 Due process requires suppression of an in-court identification when a pretrial identification
procedure is so suggestive as to give rise to a substantial likelihood of irreparable misidentification.
Simmons v. United States, 390 U.S. 377, 384 (1968); Freeney v. State, No. AP-74,766, 2005 WL
1009560, at *9 (Tex. Crim. App. 2005). In reviewing whether an identification procedure was so
impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification,
we look to the totality of circumstances surrounding the identification to determine if the procedure
was unnecessarily suggestive. Woodard v. State, No. 74,080, 2005 WL 77143, at *6 (Tex. Crim.
App. 2004), cert. denied, 544 U.S. 1040 (2005); Webb v. State, 760 S.W.2d 263, 269 (Tex. Crim.
App. 1988). An in-court identification that has been tainted by an impermissibly suggestive pretrial
identification is inadmissible. Woodard, 2005 WL 77143, at *6; Loserth v. State, 963 S.W.2d 770,
771-72 (Tex. Crim. App. 1998). In considering whether an in-court identification has been tainted,
we apply a two-step analysis: (1) whether the out-of-court identification procedure was
impermissibly suggestive; and (2) whether, if suggestive, the procedure gave rise to a substantial
likelihood of irreparable misidentification. Simmons, 390 U.S. at 384; Freeney, 2005 WL 1009560,
at *9; Woodard, 2005 WL 77143, at *6. An appellant bears the burden of establishing by clear and
convincing evidence that the pretrial identification procedure was impermissibly suggestive and that
the in-court identification was unreliable. Woodard, 2005 WL 77143, at *6; Barley v. State, 906
S.W.2d 27, 33-34 (Tex. Crim. App. 1995).

 With regard to the first step of the analysis, suggestiveness may be created by the manner in
which the pretrial identification procedure was conducted, such as, by a police officer pointing out
the suspect or indicating that the suspect is included in the line-up or photo array. Barley, 906
S.W.2d at 33. Suggestiveness may also be created by the content of the line-up or photo array itself,
if the suspect is the only individual closely resembling the pre-identification description. Id. 

 Here, Ryles argues that the photographs used in the array were impermissibly suggestive
because the appearances of the other individuals included were distinctively different from his own.
According to Ryles, there were differences in hair style, facial hair, and complexion. He also
contends that his photo in the array was the only one depicting an individual with a scar on his lip,
low-cut hair, and a goatee extending past his chin. He emphasizes that the other photos included
individuals with braided hair, mis-kept hair, no facial hair, bruising around the eye, a scar on the
forehead, and either lighter or darker facial complexions. He argues that these differences make it
all but inevitable that the complainant would mistakenly direct her attention to and identify Ryles
simply because of the scar on his lip.

 The trial court, however, denied Ryles's motion to suppress the array, indicating that one
other photo actually looked a lot like Ryles. The trial court also noted that, although the lighting was
different, two individuals in the photo array had similar skin tones to Ryles. 

 "While it might be better practice to use persons in a line-up whose every feature matches,
neither due process nor common sense requires such procedure." Dickson v. State, 492 S.W.2d 267,
271 (Tex. Crim. App. 1973); see also Ward v. State, 474 S.W.2d 471, 476 (Tex. Crim. App. 1971).
The use of photos with minor physical differences in an array is not an inherent violation of a
defendant's due process rights and does not automatically make the array impermissibly suggestive.
See Williams v. State, 675 S.W.2d 754, 757 (Tex. Crim. App. 1984). Here, the photo array contained
photos of six black males dressed in civilian clothing. There are no extreme distinctions in age or
hair color. See Ward, 474 S.W.2d at 476 n.5 (explaining that because hair styles, like clothing styles,
change rather rapidly, an impossible burden would be placed on police officers if they were required
to use only photographs of persons with like hair styles). 

 However, photos in an array that are grossly dissimilar in appearance to the suspect are
unduly suggestive. United States v. Wade, 388 U.S. 218, 233 (1967). Thus, the Supreme Court has
held a line-up procedure to be unnecessarily suggestive and conducive to irreparable mistaken
identification as to be a denial of due process under the following circumstances: the suspect was
first placed in a line-up with much shorter men and no identification was made; a one-to-one
confrontation was then arranged with the robbery victim who made a tentative identification; and
the suspect was then placed in a second line-up (the only man to be in both line-ups), at which time
the victim identified the suspect. Foster v. California, 394 U.S. 440, 441-42 (1969). The Court held
that "[t]he suggestive elements in this identification procedure made it all but inevitable that [the
witness] would identify [the suspect] whether or not he was in fact 'the man.' In effect, the police
repeatedly said to the witness, 'This is the man.'" Id. at 443. 

 Here, at both the pretrial suppression hearing and trial, (2) Detective Almanza testified that he
attempted to minimize Ryles's disfigurement by including photos of individuals with unusual faces.
Ryles argues that because his photo was the only photo depicting a person with a scar on his lip, it
was inevitable that Guzman would identify him. However, when Guzman was shown the first array,
which also included only one picture of a man with a scar on his lip, she did not make an
identification. Indeed, Guzman identified Ryles only after viewing the second array. Further,
Guzman was not instructed to identify a photo in either array; she was only asked to take her time,
and to make her selection only if she recognized anyone. She was never told that the suspect was in
either array and did not know if more arrays would be shown. 

 Moreover, in this case, the six-photo array contained all black males with varying
disfigurements or unusual facial features. Thus, there was no gross dissimilarity causing the array
to be unduly suggestive.

 Ryles also argues that the procedure of using a six-picture photo array is in itself suggestive
and can create a substantial likelihood of misidentification. He asserts that the simultaneous
presentation method, as opposed to sequential method, has been found to be less reliable by the
United States Department of Justice guidelines for law enforcement and by a New York trial court.
Ryles has failed to present any Texas authority mandating the sequential technique in photo arrays. 

Thus, we decline to impose such requirement. See Pacheco v. State, No. 04-06-00453-CR, 2007 WL
1059040, at *11 (Tex. App.-San Antonio, Apr. 11, 2007, pet. filed).

 Thus, in applying the first prong of our analysis, Ryles has failed to demonstrate that the array
was impermissibly suggestive. 

 And, even if we had found that the array was impermissibly suggestive, under the second
prong of our analysis, the array did not give rise to a substantial likelihood of irreparable
misidentification at trial. An impermissibly suggestive array does not give rise to a substantial
likelihood of irreparable misidentification at trial where the witness sufficiently establishes the
independent origin of her in-court identification. See Buxton v. State, 699 S.W.2d 212, 216 (Tex.
Crim. App. 1985). Here, Guzman's testimony established that her in-court identification was
independent from the photo array. 

 Whether a substantial likelihood of misidentification occurred depends on "whether there was
a distinct observation at the time of the event which, in light of the surrounding circumstances, can
be considered credible enough to serve as an independent origin for the in-court identification."
Limuel v. State, 568 S.W.2d 309, 313 (Tex. Crim. App. 1978). In assessing the reliability of a
witness's in-court identification, we focus on five non-exclusive factors: (1) the witness's
opportunity to view the criminal at the time of the crime; (2) the witness's degree of attention; (3)
the accuracy of the prior description given by the witness; (4) the witness's level of certainty; and
(5) the length of time between the event and the confrontation. Neil v. Biggers, 409 U.S. 188, 199-200 (1972).

 In applying the above factors, we first note that according to Erica Guzman's testimony, she
had ample opportunity to view Ryles during the robbery. Second, she paid close attention to him as
he moved throughout the store and then later when he approached the counter, showed the gun, and
demanded the money. Third, her description was very detailed. She told police that the suspect was
a black male, approximately twenty-four years of age, 5'8", 160 pounds, had short hair, a goatee, was
wearing a white T-shirt, blue jean pants, a big jacket, a red fisherman's hat, and had a very noticeable
scar on his lip. Fourth, according to Guzman, she recognized Ryles because he was a customer,
having been in the store two to three times before. Therefore, she was certain in her identification.
Fifth, only sixteen days passed between the robbery and the second array presentation, during which
Guzman identified Ryles without hesitation. Further, there is nothing in the record to support Ryles's
contention that Guzman felt pressured to make an identification. Therefore, these factors indicate
a reliable independent origin for Guzman's in-court identification. 

 We, therefore, overrule Ryles's first issue. 

Improper Jury Argument


 In his second issue, Ryles argues that the trial court erred in overruling his objection to
improper jury argument. Specifically, he complains of the following statements by the prosecutor
during closing argument:

 Now the - when we are talking about the paperwork, and the time - and let me say
one more thing about this photo line-up. If you believe that the defendant looks
different than everybody else, or that for some reason it wasn't fair, the judge
wouldn't have let you see this if it was a suggestive line-up. (3)


(emphasis added). According to Ryles, the prosecutor's statements "implied to the jury that the
question of identification, an element of the charge [that] the State must prove beyond a reasonable
doubt, had already been solved by the judge." 

 Permissible jury argument must encompass one of the following areas: summation of the
evidence; reasonable deduction from the evidence; answers to opposing counsel's argument; or a
plea for law enforcement. Gaddis v. State, 753 S.W.2d 396, 398 (Tex. Crim. App. 1988). Here,
although the State concedes that the argument was improper as it does not fall within these four
areas, it argues that the error was harmless. We agree.

 Improper jury argument is non-constitutional error. Mosley v. State, 983 S.W.2d 249, 259
(Tex. Crim. App. 1998). Thus, we apply Texas Rule of Appellate Procedure 44.2(b): "Any other
error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."
Tex. R. App. P. 44.2(b).

 In considering whether a defendant's substantial rights have been affected by improper jury
argument, we consider the following factors: (1) the severity of the misconduct (the magnitude of
the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct
(the efficacy of any cautionary instruction by the judge), and (3) the certainty of the defendant's
conviction absent the misconduct (the strength of the evidence supporting the conviction). Mosley,
983 S.W.2d at 259. For an improper jury argument to rise to the level of warranting a reversal, the
argument in light of the record must be "extreme or manifestly improper." Guidry v. State, 9 S.W.3d
133, 154 (Tex. Crim. App. 1999). 

 Applying the first factor to the present case, the severity of the misconduct, we note that the
misconduct was only moderately severe in that the improper argument was a small portion of the
State's entire closing argument; indeed, it consisted of only three sentences. And, after the trial court
overruled defense counsel's objection, the prosecutor moved on and did not repeat the improper
argument again. Further, we disagree with Ryles that the prosecutor implied to the jury that the
question of identification had already been resolved by the judge. The prosecutor told the jury that
it would not have seen the array if it was impermissibly suggestive; the prosecutor did not state that
the judge had determined that the witness had properly identified Ryles.

 With regard to the second factor, because the objection was overruled, the improper argument
was not cured by a trial court instruction. And, according to Ryles, "the error was certainly not cured
when the State added" the following statements later during its closing argument:

 There is - the last thing that I want to tell you about is the - I want you to think about
this. You are to judge the credibility of the witnesses and make a decision on who
you believe. That's your job right now. And you study the evidence when you are
making this decision. But keep in mind the crime that was committed against Erica
[Guzman]. And keep in mind that people are going to hear your verdict. If you find
this defendant not guilty, you're going to make him bulletproof. And you're going to
tell Erica -


 Defense: Objection, improper argument; prejudicial.


 Court: It's overruled.


 And you're going to tell Erica that you don't believe her. The defendant is going to
hear your verdict.


(emphasis added). These statements by the prosecutor, however, did not add to any harm suffered
by Ryles. Instead, they were a plea for law enforcement. 

 With regard to the third factor, there was substantial evidence to support Ryles's conviction.
The videotape of the store robbery was entered in evidence. Guzman recognized Ryles as a previous
customer and had time to observe him during the robbery. Thus, there is certainty that Ryles would
be convicted absent the prosecutor's statements. Therefore, the statements by the prosecutor were
harmless.

 Having found that the error was harmless, we overrule Ryles's second issue.

Conclusion


 We affirm the judgment of the trial court.


 Karen Angelini, Justice

DO NOT PUBLISH
1. According to Officer Miller, approximately a week before, robbery detectives had attended patrol officer
roll call to put out a description of a robbery suspect and showed the video of the Radha Food Mart robbery to the
patrol officers. 
2. Generally, in reviewing a motion to suppress, we would only look to evidence presented at the pretrial
hearing because the trial judge did not have the benefit of the testimony from trial when making his ruling. Barley,
906 S.W.2d at 31 n.2. However, when the error complained of is the admissibility of the evidence at trial and the
issue was relitigated by the parties during trial, consideration of relevant trial testimony is appropriate. Webb v.
State, 760 S.W.2d 263, 272 n.13 (Tex. Crim. App. 1988); see also Barley, 906 S.W.2d at 31 n.2. Even though Ryles
"relitigated" facts surrounding the pretrial identification procedure only in the context of trying to impugn the weight
the jury should accord Guzman's identification of him at trial and was not attempting to retry the legal question of its
admissibility, "[t]o hold that appellate review is limited to facts adduced at the pretrial hearing . . . could place the
appellate court in the untenable position of having to reverse a conviction in the face of a record, which supports,
albeit belatedly, the trial court's ruling." Webb, 760 S.W.2d at 272 n. 13. Therefore, "[i]n scrutinizing trial
determinations of admissibility of identification testimony, [the Texas Court of Criminal Appeals] has not so limited
its review." Id.; see also Barley v. State, 906 S.W.2d 27, 31 n.2 (Tex. Crim. App. 1995) (explaining that in an
identification case, because "limiting review to the evidence adduced at the hearing could lead to an untenable
result," the court of criminal appeals has "place[d] no limit on the review of identification admissibility"). 
3. Defense counsel objected to this statement as improper argument, but the objection was overruled by the
trial court.